IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| GLOBAL DIMENSIONS, LLC<br>923 Maple Grove Drive, Suite 201,<br>Fredericksburg, VA 22407<br><br>Plaintiff,<br><br>v.<br><br>RANDALL TACKETT<br>136 Springside Drive<br>Spring Lake, North Carolina 28390<br><br>Defendant. | CIVIL ACTION NO. 5:23-cv-168<br><br>**COMPLAINT** |

Plaintiff Global Dimensions, LLC ("Global" or the "Company"), for its Complaint against Defendant Randall Tackett ("Defendant" or "Tackett"), alleges as follows:

## NATURE OF THE ACTION

Global brings this action to seek injunctive relief and monetary damages arising out of the substantial and irreparable injury it has suffered at the hands of a former senior-level employee, Defendant Randall Tackett ("Tackett"). Unknown to Global, Tackett, while a Global employee, established a competing company called Special Operations Consulting and Development, LLC ("Competitor"). Tackett then: (a) issued a letter of resignation from Global effective March 31, 2023; and (b) while still a Global employee used his access to its Confidential/Proprietary Information to pursue business for Competitor, in violation of his executed restrictive covenants. Tackett's efforts succeeded: while again still employed by Global, Tackett met with and negotiated a Letter of Intent between Competitor and one of Global's key prospective clients, Taiwan Mil & Le Tactical Research and Development Association (the "Client"). After Global

1

Case 5:23-cv-00168-FL    Document 1    Filed 03/31/23    Page 1 of 14

issued a Cease & Desist letter, Tackett continued to solicit the Client, but began directing Client to contract with a third-party company with whom Tackett likely has economic interests – and that in any event is not Global.

Tackett's use of Global's Confidential/Proprietary Information for the benefit of Competitor and his solicitation of the Client violate Tackett's signed Offer Letter for Employment ("Offer Letter") and associated Mutual Nondisclosure Agreement ("NDA"). Global seeks immediate and permanent injunctive relief to halt further or similar breaches, in addition to monetary damages.

## THE PARTIES

1. Global is a limited liability company incorporated under the laws of the State of Virginia, and its principal place of business is located at 923 Maple Grove Drive, Suite 201, Fredericksburg, VA 22407. Ronald Christopher Newton, a resident and citizen of Virginia, is and has at all times relevant to this Complaint been the sole member of Global.

2. At all relevant times, Tackett has been a resident and citizen of the State of North Carolina, residing at 136 Springside Drive, Spring Lake, North Carolina 28390.

## JURISDICTION AND VENUE.

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the value in controversy exceeds the sum of $75,000, exclusive of interests and costs.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because it is the judicial district where Tackett resides.

## FACTS COMMON TO ALL COUNTS

### Global's Business

5. Global is a defense and space consulting company. Global specializes in providing quality experts with exceptional cost control, keeping to a core of unwavering integrity and ethics, and a focus on the care of its employees to provide customers with quality mission success. *See* Declaration of Ronald "Chris" Newton ("Newton Dec."), at ¶ 4, attached as **Exhibit A**.

6. Global's mission is to "deliver[] high-quality, prompt service while creating a great working environment for [its] employees." Among other things, its values include Quality, Ethics, Integrity, Equal Opportunity, Fairness, Inclusion, Loyalty, and Trust. *See id.* at ¶ 5.

7. Global specifically specializes and provides services relating in/to Language & Culture, Instructional Design & Training, Intelligence, Information Technology & Cyber, Special Operations, Consulting, and Logistics. *See id.* at ¶ 6.

8. Global carefully employs a selected group of quality professionals who are dedicated to providing the highest quality of service, production, and efficiency to all contracts it supports. Global facilitates an environment where employee care, satisfaction, and teamwork are top priorities.

9. Global's success in the consulting business is highly dependent on its employees and its established relationships with its customers and potential clients. These relationships take time and sometimes years to source and grow and directly contribute to the Global bottom line. *See id.* at ¶ 8.

10. Global continues to educate and support its employees in their jobs, maintaining these relationships and in developing new relationships throughout their employment. *See id.* at ¶ 9.

11. Global invests significant resources in its employees, especially its Senior Program Managers and Directors, such as Tackett, who daily manage the overall relationship between Global, its customers, employees, and potential clients, and are responsible for portions of Global's profit and loss at their respective directorates. *See id.* at ¶ 10.

### **Tackett's Employment with Global**

12. On May 20, 2020, Tackett started his employment as a Senior Program Manager. *See id.* at ¶ 9; *see also* Offer Letter, attached as **Exhibit B**. As a condition of employment, Tackett executed the Offer Letter, as well as the NDA. *See* NDA, attached as **Exhibit C**.

13. Both executed documents contained confidentiality obligations, as well as covenants not to compete and not to solicit customers.

14. Tackett signed the Offer Letter on May 11, 2020. *See* **Exhibit B**, p. 3.

15. Tackett signed the NDA on May 11, 2020. *See* **Exhibit C**, p. 6.

16. The Offer Letter provides, in relevant part:

**Non-Competition Agreement** [Tackett] will not solicit any customer or potential customer of [Global] identified during employment with [Global], or otherwise divert or attempt to divert any existing business of [Global]. [Tackett] will not … terminate his/her employment for the purpose of joining, associating or becoming employed with any business or activity which is in competition with any products and/or services sold, marketed, or provided by [Global]."

**Confidentiality** [Tackett] will not, either during employment with [Global] or at any time thereafter … use, publish, disclose, appropriate or communicate, directly or indirectly (either individually or to any other persons, entities, companies or outside contacts), and of the following information which [Tackett], in any way, have acquired or may acquire during, or by reason of, employment with [Global]:

a. salary, benefits, marketing, sales, service, cost, business method, formula, product specification, planning, engineering, and/or technical information relating to [Global], as well as customer lists and/or any other information which could give any third party an opportunity to obtain advantage over competitors who did not know such information; and

4

b. trade secrets, which are used by [Global] and which give it an opportunity to obtain an advantage over competitors who do not know those trade secrets.

c. Any spreadsheets, employee or candidate data, documents, audio or video files, strategy information, customer data or any other information or data which is considered proprietary/confidential by [Global].

*See* **Exhibit B**.

17. The NDA provides, in relevant part:

**3) Recipient's Obligations.**

a) Recipient's Treatment to Confidential Information. [Tackett] agrees that the receipt of any Confidential/Proprietary Information is considered confidential and proprietary to [Tackett]. [Tackett] shall hold the same in confidence, shall not use the Confidential/Proprietary Information other than for the Authorized Purposes as defined by the Chris Newton, CEO Global Dimensions, and shall disclose it only to Global Dimensions officers, directors, or employees who are actively employed with Global Dimensions with a specific need to know. [Tackett] will not disclose, publish or otherwise reveal any of the Confidential/Proprietary Information received from the Global Dimensions to any other party whatsoever except with the specific prior written authorization of Mr. Chris Newton himself and [Tackett] agrees to not disclose, publish or otherwise reveal any confidential/proprietary information to any other party/individual/company/entity ever upon termination of employment with Global Dimensions… Upon any termination or separation of employment for any reason of [Tackett] from Global Dimensions [Tackett] agrees to surrender all data, information, equipment or other confidential/proprietary information which is in the possession of [Tackett] or other known entity to which [Tackett] provided access to information or otherwise known from [Tackett] to where information could be in another party's possession.

**4) Non-Compete**

Any information provided or that is utilized by [Tackett] that is provided by Global Dimensions or acquired via Information provided by Global Dimensions and its resources, is considered proprietary and confidential information whether marked or unmarked. This information will be considered legally bound by Global Dimensions and is not authorized to be released to any other party or company nor is it to be utilized in support to any other person or company outside of Global Dimensions LLC defined herein. This includes any contacts or personnel who are acquired, provided for intentions of processing or recruiting, visualized through Global Dimensions resources or any other use for employment. All contact information and other personal information of any person recruited, employed, contacted or otherwise supported through Global Dimensions is also considered proprietary and confidential. If at time [Tackett] were to leave employment and/or no longer support Global Dimensions, all this information is to be surrendered back

5

to Global Dimensions and none of the information nor resources are to be shared with any other person who are not employed with Global Dimensions or any other company or business.

*See* **Exhibit C**.

18. As a Senior Program Manager for Global, and subsequently promoted to Director of Special Operations Forces (SOF) programs, Tackett had responsibility for: overseeing Special Operations Command ("SOCOM") Core Services contracts and proposals/operations to those contracts; managing, overseeing, and deciding opportunities of anything Special Operations related; business development for Special Operations, reviewing candidates for Special Operations contracts, reviewing and recommending salaries, benefits, and margins for Special Operations contracts; traveling to new locations to finalize business leads and represent Global on Special Operations training opportunities to various potential clients; and briefing U.S. and foreign leaders on Global's capabilities with the intent of soliciting new business. *See* **Exhibit A**, at ¶ 10.

19. Among other Confidential/Proprietary Information, Tackett had access to current and future opportunities, internal pricing/profit data and planning, briefings to Special Operations missions, budget summaries for potential overseas opportunities, strategic discussions of future growth and teaming partnerships, bids, proposals, strategic data, customers, internal performance metrics, prime (government and subcontract relationships), prime and subcontract opportunities, relationships with Prime and Government contacts, foreign contacts, foreign business opportunities, foreign strategic planning, key personnel to opportunities both foreign and domestic, Global's databases with candidates and other proprietary data, proposal data/content, proposal formatting and other proprietary bidding solutions/techniques, briefing data to potential foreign and domestic clients/customers, relationships with potential foreign and domestic customers/clients, access to foreign and domestic customers/clients, connections with foreign and domestic customers/clients, customer purchasing information, pricing, burdens, margin

6

development, pricing structures, electronic data, computers/phones and other equipment with access to Global's networks and data, strategic marketing materials, and financial data. *See id*. at ¶ 11.

20. The identity of Global's customers, potential customers, pricing and sales information, customer purchasing information, and the terms and conditions of Global's bids and proposals for customers is not information which is readily available to the public. *See id.* at ¶ 12.

## Global's Efforts to Protect Its Business Operations and Clients

21. Global takes measures to ensure that its assets, which includes Confidential/Proprietary Information as well as information related to its clients, potential clients, strategic discussions, strategic partnerships, potential opportunities, strategic planning, and customers are protected. *See id.* at ¶ 13.

22. Global's Confidential/Proprietary Information is highly valuable to Global, secured in a variety of ways, and are accessible only to a limited number of Global employees. *See id*.

23. Global has a number of policies that prohibit the disclosure of Global's Confidential/Proprietary Information, including its Offer Letter and NDA. All Global employees are required to acknowledge that they have reviewed and will abide by these policies. *See id.* at ¶ 14.

24. Tackett was well aware of Global's policies and procedures regarding protection of its Confidential/Proprietary Information, including information relating to customers, clients, and potential clients, and Tackett was well aware of Global's desire to prevent Competitor from obtaining Confidential/Proprietary Information and using such information to solicit business from the Client.

7

## Tackett Resigns His Employment

25. On March 19, 2023, Tackett tendered a Resignation Letter to Global. *See* **Exhibit D**.

26. In his Resignation Letter, Tackett stated he is going to be a "direct consultant" for the Client through "my own company" – that is, Competitor. Well before his Resignation Letter, on March 3, 2023, Competitor, through Tackett, had entered into a Letter of Intent with a potential client of Global. **Exhibit A**, ¶ 16; Letter of Intent, **Exhibit E**.

27. When Global discovered Tackett had established Competitor and used it to solicit work from the Client, Global retained legal counsel and sent a letter, dated March 27, 2023, reminding Tackett of his restrictive covenant obligations to Global. *See* Cease and Desist Letter, **Exhibit F**. Tackett never responded. Instead, Tackett continued to solicit business from the Client, directing the Client to contract with a third-party with whom, presumably, Tackett has an economic interest.

28. Global reasonably fears it will lose the Client and future customers given Tackett's express representations in his Resignation Letter. In fact, since Tackett's resignation, both Tackett and the Client have ceased all communications with Global despite a verbal agreement to do business.

29. Tackett's use of Confidential/Proprietary Information to solicit the Client in order to benefit Competitor is a clear contractual violation as well as a violation of the law.

30. As a direct result of Tackett using Confidential/Proprietary Information for the benefit of his unknown Competitor and soliciting the Client, Global can reasonably expect to lose future clients as well. The loss of such business will continue to cause Global significant damages.

31. It is inevitable that Tackett either has used or disclosed or will use or disclose Global's Confidential/Proprietary Information that he learned and/or developed while serving as a Global Senior Program Manager and Director of Special Operations to Global's detriment.

32. Tackett's actions threaten Global with material harm.

## COUNT I

## BREACH OF FIDUCIARY DUTY OF LOYALTY

33. The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

34. Pursuant to Tackett's employment relationship with Global, he was placed in a position of trust regarding Global's operations, customers, prospects, and Confidential/Proprietary Information.

35. Based upon his employment relationship and position of trust with Global, Tackett owed a fiduciary duty to act solely for Global's benefit.

36. Tackett used his access to the Client, which he obtained solely via Global and was to pursue solely for its benefit, to persuade the Client to direct business not to Global, but to Competitor. After succeeding in this plan, Tackett voluntarily resigned from Global effective March 31 2023. In his resignation letter, Tackett declared intentions that confirm not only his unlawful conduct as to Client, but also disclose Tackett's still broader pursuit of business opportunities to the exclusion of Global.

37. Upon information and belief, while still employed with Global, Tackett acted in disregard of the non-competition, non-solicitation, and confidentiality covenants contained in his Offer Letter and NDA, and acted to disclose and/or will inevitably disclose or use Global's

Confidential/Proprietary Information for the benefit of the Competitor, including but not limited to soliciting the Client.

38. Tackett's conduct as alleged was willful and malicious and constitutes a breach of the fiduciary duty of loyalty that Tackett owed to Global.

39. As a direct and proximate result of Tackett's willful, malicious and intentional conduct, Global has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

## COUNT II

## BREACH OF CONTRACT – NON-COMPETITION

40. The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

41. On May 11, 2020, Tackett executed the Offer Letter and NDA, both of which contained non-competition clauses, for good and valuable consideration and as a condition of his employment.

42. Tackett had a duty to abide by the non-competition covenant in the Offer Letter and NDA.

43. Based on the actions described herein, Tackett breached his duty by using Confidential/Proprietary Information for the benefit of his unknown company, the Competitor, and soliciting Global's Client.

44. As a direct and proximate result of Tackett's wrongful conduct described herein, Global has sustained and will continue to sustain immediate and irreparable harm and injury for which there is no adequate remedy at law.

45. In addition to the irreparable injury described above, as a direct and proximate result of Tackett's wrongful conduct, Global has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

46. Global is also incurring legal expenses to enforce the NDA and Offer Letter. Pursuant to the NDA's Governing Law and Equitable Relief clause, Global is entitled to "payment of all legal expenses" to enforce the Agreements.

## COUNT III

## BREACH OF CONTRACT – NON-SOLICITATION

47. The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

48. Tackett has a duty to abide by the non-solicitation covenant in his Offer Letter and NDA.

49. Based on the actions described herein, Tackett breached his duty under the Offer Letter and NDA by soliciting or influencing Global's Client.

50. As a direct and proximate result of Tackett's wrongful conduct described herein, Global had sustained and will continue to sustain immediate and irreparable harm and injury for which it has no adequate remedy at law.

51. In addition to the irreparable injury describe above, as a direct and proximate result of Tackett's wrongful conduct, Global has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

52. Global is also incurring legal expenses to enforce the NDA and Offer Letter. Pursuant to the NDA's Governing Law and Equitable Relief provisions, Global is entitled to "payment of all legal expenses" to enforce the Agreements.

## COUNT IV

## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONSHIP AND PROSPECTIVE ECONOMIC ADVANTAGE

53. The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

54. Global's relationship with the Client is advantageous to Global. There exists a probability of future economic benefit to Global from its business relationship with the Client.

55. Tackett has already contacted the Client in an attempt to intentionally interfere with Global's business relationship that currently exists.

56. Global fears the loss of this Client relationship. Tackett's intentional wrongful conduct will disrupt the economic relationships between Global and the Client.

57. As a direct and proximate result of Tackett's conduct, Global has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Global Dimensions, LLC prays for judgment as follows:

1. For damages in an amount according to proof at trial;

2. For restitution and/or disgorgement of all money, profits, compensation or property Tackett has acquired or will acquire by any wrongful or unlawful means or as a result of his breach of loyalty, breach of contract, and tortious interference;

3. All legal fees to enforce the NDA and Offer Letter;

4. For damages in an amount to be determined as appropriate to punish Tackett and deter like conduct;

5. For an order requiring Tackett to show cause, if any he has, why he should not be enjoined as set forth below, during the pendency of this action;

6. Preliminarily and permanently enjoin Tackett from possessing, using, or disclosing Global's Confidential/Proprietary Information on his own behalf or for the benefit of any entity, including but not limited to the Competitor or any future employer for as long as that information remains confidential and proprietary to Global;

7. Preliminarily and permanently enjoin Tackett from working or providing services to the Client or otherwise engaging in any business dealings, whether directly or indirectly, with the Client or any other client or potential client of Global that Tackett was associated with while an employee of Global;

8. For an order requiring Tackett to abide by the covenants in his Offer Letter and NDA, including the covenant of confidentiality, non-competition and non-solicitation, according to the terms set forth in the Offer Letter and NDA;

9. For prejudgment and post judgment interest at the maximum legal rate, as provided by the laws of the Commonwealth of North Carolina, as applicable, as an element of damages which Global has suffered as a result of the wrongful acts complained of herein;

10. For reasonable attorneys' fees and costs; and

11. For such other and further relief as the Court may deem just and proper.

Dated: March 31, 2023

/s/ Nathan C. Chase, Jr.

Nathan C. Chase, Jr.
N.C. Bar No. 39314
NChase@robinsonbradshaw.com
**ROBINSON, BRADSHAW & HINSON, P.A.**
101 N. Tryon St. #1900
Charlotte, North Carolina 28246
Telephone:     704.377.8375
Facsimile:      704.373.3975

Timothy C. Bass, Esq. *(Local Rule 83.1(e) appearance pending)*
basst@gtlaw.com
**GREENBERG TRAURIG, LLP**
1750 Tysons Blvd., Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1367
Fax: (703) 749-1301

*Attorneys for Plaintiff Global Dimensions, LLC*