**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | |
|---|---|
| GLOBAL DIMENSIONS, LLC<br>923 Maple Grove Drive, Suite 201<br>Fredericksburg, Virginia 22407 | CIVIL ACTION NO. 5:23-cv-00168 |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| RANDALL TACKETT<br>136 Springside Drive<br>Springside Lake, North Carolina 28390 | |
| and | |
| SPECIAL OPERATIONS CONSULTING<br>AND DEVELOPMENT, LLC<br>136 Springside Drive<br>Springside Lake, North Carolina 28390 | |
| Serve: LegalCorp Solutions, LLC<br>5540 Centerview Dr., Suite 200<br>Raleigh, North Carolina 27606 | |
| Defendants. | |

Plaintiff Global Dimensions, LLC ("Global Dimensions" or "Plaintiff") alleges as follows for its First Amended Complaint against Defendants Randall Tackett ("Tackett") and Special Operations Consulting and Development, LLC ("SOC-D"):

## <u>NATURE OF THE ACTION</u>

Global Dimensions brings this lawsuit to seek redress for extensive damages suffered as a result of the intentional and wrongful conduct perpetrated by Tackett and SOC-D. While working as a senior-level employee at Global Dimensions, Tackett used his access to Plaintiff's network, strategies, contacts, customers, potential customers and proprietary/confidential information to

1

pursue business for his own competing company, SOC-D, from at least one of Plaintiff's key prospective clients, Mr. Robert Tsao and the Taiwan Mil & Le Tactical Research and Development Association (collectively "TTRDA").

Tackett's efforts succeeded: while still employed by Global Dimensions, Tackett had private conversations with TTRDA and negotiated a Letter of Intent between SOC-D and TTRDA (the "LOI"). Tackett then issued a letter of resignation to Global Dimensions and continued thereafter to solicit business from TTRDA. Finally, Tackett repeatedly disparaged Global Dimensions in an effort to preclude Plaintiff from doing any kind of business in Taiwan.

Tackett's use of Plaintiff's network, strategies, contacts and proprietary/confidential information for the benefit of SOC-D, and his solicitation of TTRDA while employed at Global Dimensions and thereafter, violates Tackett's signed Offer Letter for Employment ("Offer Letter") and associated Mutual Nondisclosure Agreement ("NDA"). Tackett's wrongful conduct, which he perpetrated through SOC-D, has also resulted in the loss of significant future business from TTRDA and other potential clients in Taiwan which include Robert Tsao and the Taiwanese government. While Global Dimensions has already received preliminary injunctive relief from this Court prohibiting Tackett and SOC-D from further contracting with TTRDA and its associates, Plaintiff seeks permanent injunctive relief and monetary damages for the losses already incurred and expected to be incurred in the future.

Global Dimensions reserves its right to amend this lawsuit further if it discovers additional wrongful conduct or violations of the Offer Letter and/or NDA.

## THE PARTIES

1.    Global Dimensions is a limited liability company incorporated under the laws of Virginia, and its principal place of business is located at 923 Maple Grove Drive, Suite 201,

Fredericksburg, VA 22407. Ronald "Chris" Newton, a thirty-six plus year Senior Army Intelligence Veteran and resident and citizen of Virginia, is the sole member of Global Dimensions.

2.      Tackett is a resident and citizen of the State of North Carolina, residing at 136 Springside Drive, Spring Lake, North Carolina 28390.

3.      SOC-D is a limited liability company incorporated under the laws of the State of North Carolina, and its principal place of business is located at Tackett's residential address. Based on information and belief, Tackett and his wife, Lillian Tackett, are the sole members and managers of SOC-D.

## JURISDICTION AND VENUE.

4.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the value in controversy exceeds the sum of $75,000, exclusive of interests and costs.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because it is the judicial district where Tackett and SOC-D reside.

## FACTS COMMON TO ALL COUNTS

### Global Dimensions' Business

6.      Global Dimensions is a defense and space consulting company with a world-wide list of clients and potential clients. Global Dimensions specializes in providing quality expert consulting services with exceptional cost control, keeping to a core of unwavering integrity and ethics, and a focus on the care of its employees to provide customers with quality mission success. *See* Declaration of Ronald "Chris" Newton ("Newton Dec."), at ¶ 4, attached as **Exhibit A**.

3

7.     Global Dimensions' mission is to "deliver[] high-quality, prompt service while creating a great working environment for [its] employees." Among other things, its values include Quality, Ethics, Integrity, Equal Opportunity, Fairness, Inclusion, Loyalty, and Trust. *See id.* at ¶ 5.

8.     Global Dimensions specifically specializes and provides services relating in/to Language & Culture, Instructional Design & Training, Intelligence, Information Technology & Cyber, Special Operations, Consulting, and Logistics. *See id.* at ¶ 6.

9.     Global Dimensions carefully employs a selected group of quality professionals who are dedicated to providing the highest quality of service, production and efficiency to all contracts it supports. Global Dimensions facilitates an environment where employee care, satisfaction, and teamwork are top priorities.

10.     Global Dimensions' success in the consulting business is highly dependent on its employees and its established relationships with its customers and potential clients. These relationships take time and sometimes years to source and grow, utilizing many personnel and financial resources, and directly contribute to Global Dimensions' bottom line. *See id.* at ¶ 8.

11.     Global Dimensions continues to educate and support its employees in their jobs, maintaining these relationships and in developing new relationships throughout their employment. *See id.* at ¶ 9.

12.     Global Dimensions invests significant resources in its employees, especially its Senior Program Managers and Directors, such as Tackett, who daily manage the overall relationship between Global Dimensions, its customers, employees and potential clients, and are responsible for portions of Global Dimensions' profit and loss at their respective directorates.

4

Global Dimensions, specifically Mr. Newton, should be able to trust its employees without question, and their integrity and ethics. *See id*. at ¶ 10.

## Tackett's Employment with Global Dimensions

13.     On May 20, 2020, Tackett started his employment as a Senior Program Manager. *See* **Exhibit A,** at ¶ 9. As a condition of employment, Tackett executed an Offer Letter on May 11, 2020 and a NDA on May 12, 2020. *See* Offer Letter, attached as **Exhibit B**; NDA, attached as **Exhibit C**.

14.     Both employment documents contained confidentiality obligations and provisions which require Tackett to reimburse Global Dimensions for any legal expenses incurred to enforce the same. The Offer Letter also contained a covenant not to solicit Plaintiff's existing and prospective customers.

15.     Specifically, the Offer Letter provides, in relevant part:

**Non-Competition Agreement** [Tackett] will not solicit any current customer or potential customer of [Global Dimensions] identified during employment with [Global Dimensions], or otherwise divert or attempt to divert any existing business of [Global Dimensions]. … The geographical area to which this non-competition agreement applies is any area in which [Global Dimensions] currently solicits or conducts business, and/or any area in which [Global Dimensions] plans to solicit or conduct business for a period of two years after [Tackett] leaves employment with [Global Dimensions]. Both parties agree that the time and scope of this Non-Competition agreement are reasonable.

**Confidentiality** [Tackett] will not, either during employment with [Global Dimensions] or at any time thereafter … use, publish, disclose, appropriate or communicate, directly or indirectly (either individually or to any other persons, entities, companies or outside contacts), any of the following information which [Tackett], in any way, have acquired or may acquire during, or by reason of, employment with [Global Dimensions]:

a. salary, benefits, marketing, sales, service, cost, business method, formula, product specification, planning, engineering, and/or technical information relating to [Global Dimensions], as well as customer lists and/or any other information which could give any third party an opportunity to obtain advantage over competitors who did not know such information; and

b. trade secrets, which are used by [Global Dimensions] and which give it an opportunity to obtain an advantage over competitors who do not know those trade secrets.

c. Any spreadsheets, employee or candidate data, documents, audio or video files, strategy information, customer data or any other information or data which is considered proprietary/confidential by Global Dimensions senior management.

*See* **Exhibit B**, p. 2, 3.

16.     The NDA, in turn, provides, in relevant part:

**3) <u>Recipient's Obligations.</u>**

a) <u>Recipient's Treatment of Confidential Information.</u> [Tackett] agrees that the receipt of any Confidential/Proprietary Information is considered confidential and proprietary to [Tackett]. [Tackett] shall hold the same in confidence, shall not use the Confidential/Proprietary Information other than for the Authorized Purpose as defined by the Chris Newton, CEO Global Dimensions, and shall disclose it only to Global Dimensions officers, directors, or employees who are actively employed with Global Dimensions with a specific need to know. [Tackett] will not disclose, publish or otherwise reveal any of the Confidential/Proprietary Information received from the Global Dimensions to any other party whatsoever except with the specific prior written authorization of Mr. Chris Newton himself and [Tackett] agrees to not disclose, publish or otherwise reveal any confidential/proprietary information to any other party/individual/company/entity ever upon termination of employment with Global Dimensions…

**4) <u>Non-Compete</u>**

Any information provided or that is utilized by [Tackett] that is provided by Global Dimensions or acquired via Information provided by Global Dimensions and its resources, is considered proprietary and confidential information whether marked or unmarked. This information will be considered legally bound by Global Dimensions and is not authorized to be released to any other party or company nor is it to be utilized in support to any other person or company outside of Global Dimensions LLC defined herein. This includes any contacts or personnel who are acquired, provided for intentions of processing or recruiting, visualized through Global Dimensions resources or any other use for employment. … While employed or supporting Global Dimensions, [Tackett] agrees to adhere to all terms of this NDA and will not use, share, support, personally store, or plan to use any Global Dimensions proprietary information to any person, persons, business or other entity outside of the Global Dimensions direct company ownership. Chris Newton, current president/CEO/owner, has the only authority to release any said information. Also, working the information to support normal day to day operations doesn't authorize any release of information. Working with proprietary and

6

confidential company information is used only for the company business and nothing else. Information, data or other which is protected under this NDA will not be used, retained or dispersed elsewhere outside of the Global Dimensions Perimeters.

**5) <u>Term</u>**

This NDA is in effect from day 1 of your employment, discussions or support to Global Dimensions. This includes W2, 1099, part time and all other categories as applicable to your current and previous status. Confidential/Proprietary materials acquired while an employee of Global Dimensions are protected and should be returned. Any Global Dimensions confidential and proprietary information attained and/or removed from Global Dimensions while employed with Global Dimensions, or thereafter without proper specific authorization for removal and usage in writing from Owner Mr. Chris Newton, will be protected for 5 years from the date of employee separation or to the maximum extend of federal and/or state laws. Further, the obligation not to disclose shall not be affected by bankruptcy, receivership, assignment, attachment or seizure procedures, whether initiated by or against the company or signee, nor by the rejection of any agreement between the company or signee, by a trustee of a company or signee in bankruptcy, or by the company or signee as a debtor-in-possession or the equivalent of any of the foregoing under local law. Non-Compete clause shall be in full effect and protected for a period of 3 years from the termination of your employment with Global Dimensions. In addition, signee/employee agrees not to disclose any company proprietary/confidential information and non-compete defined information to any outside party while employed with Global Dimensions. This NDA remains in full effect for the full length of employment with Global Dimensions until officially terminated or released from employment. All facets and sections of this agreement will remain in full effect for the full term of employment with no exception to include the barring of release of Global Dimensions information, proprietary or confidential designated information, information obtained while employed with Global Dimensions and any customers who are associated with Global Dimensions. Information is defined as any paper, electronic, email, data, computer, equipment, strategy, customers, contracts, plans, procedures, protocols, laws, personnel, employees, spreadsheets, office documents, financials, software, locations, or other information designated as company proprietary or confidential in nature.

*See* **Exhibit C,** p. 2, 3.

17.     The Offer Letter and NDA were always intended to be read together as a single

contract as provided for in Section 9 of the NDA which states as follows:

> This Agreement is in conjunction with any other offer letter or agreement. If there are any discrepancies or conflictions between agreements, Global Dimensions owner will dictate which will take precedence over the other in the specific areas of conflict. … This NDA is upheld in addition to any other

specified offer letter or other document which is signed by the signee. Any information which conflicts between signed documents will be upheld at whichever is most beneficial to Global Dimensions or which is decided to be upheld by Global Dimensions and its Owner Mr. Chris Newton at any time during employment or after employment. …

*See* **Exhibit C**, p. 4.

18.     As such, the "Term" provision in Section 5 of the NDA which provides for a three-year post-employment limitation on Tackett's "non-compete" obligations—in addition to Tackett's full term of employment—was meant to apply equally to the provisions in the Offer Letter which prohibited Tackett from soliciting Plaintiff's current and prospective customers.

19.     As a Senior Program Manager for Global Dimensions, and subsequently when he was promoted to Director of Special Operations Forces (SOF) programs, Tackett had worldwide responsibility for: overseeing Special Operations Command ("SOCOM") Core Services contracts and proposals/operations to contracts; managing, overseeing, and deciding opportunities of anything Special Operations related; reviewing, managing and recommending salaries, benefits, employee hours and margins for Special Operations contracts and performance; traveling to new locations to finalize business leads and represent Global Dimensions on Special Operations training opportunities to various potential clients; and briefing U.S. and foreign leaders on Plaintiff's capabilities with the intent of soliciting new business. *See* **Exhibit A**, at ¶ 10.

20.     Among other Confidential/Proprietary Information, Tackett had access to current and future opportunities, internal pricing/profit data and planning, briefings to Special Operations missions, budget summaries for potential overseas opportunities, strategic discussions of future growth and teaming partnerships, bids, proposals, strategic data, customers, internal performance metrics, prime (government and subcontract relationships), prime and subcontract opportunities, relationships with Prime and Government contacts, foreign contacts, foreign business opportunities, foreign strategic planning, key personnel to opportunities both foreign and domestic,

8

Plaintiff's databases with candidates and other proprietary data, proposal data/content, proposal formatting and other proprietary bidding solutions/techniques, briefing data to potential foreign and domestic clients/customers, relationships with potential foreign and domestic customers/clients, access to foreign and domestic customers/clients, connections with foreign and domestic customers/clients, customer purchasing information, pricing, burdens, margin development, pricing structures, electronic data, computers/phones and other equipment with access to Plaintiff's networks and data, strategic marketing materials, and financial data. *See id.* at ¶ 11.

21.     The identity of Global Dimensions' customers, potential customers, pricing and sales information, customer purchasing information, and the terms and conditions of Global Dimensions' bids and proposals for customers is not information which is readily available to the public. *See id.* at ¶ 12.

**Global Dimensions' Efforts to Protect its Business Operations and Clients**

22.     Global Dimensions takes measures to ensure that its assets, which includes Confidential/Proprietary Information as well as information related to its clients, potential clients, strategic discussions, strategic partnerships, potential opportunities, strategic planning, and customers are protected. *See* **Exhibit A,** at ¶ 13.

23.     Plaintiff's Confidential/Proprietary Information is highly valuable to Global Dimensions, secured in a variety of ways, and are accessible only to a limited number of Global Dimensions employees. *See id.*

24.     Plaintiff has a number of policies that prohibit the disclosure of its Confidential/Proprietary Information, including its Offer Letter and NDA. All Global Dimensions

9

employees are required to acknowledge that they have reviewed and will abide by these policies. *See id.* at ¶ 14.

25.     Tackett was well aware of Global Dimensions' policies and procedures regarding protection of its Confidential/Proprietary Information, including information relating to customers, clients, and potential clients, and Tackett was well aware of Global Dimensions' desire to prevent SOC-D from obtaining Confidential/Proprietary Information and using such information to solicit business from TTRDA.

## Global Dimensions Identifies TTRDA as a Potential Client

26.     In late 2020, Global Dimensions started planning to expand into the Asian market, specifically Taiwan, due to rising tensions between Taiwan and China

27.     In June 2021, Global Dimensions obtained an International Traffic in Arms Regulations ("ITAR") marketing license for Taiwan, which is a government prerequisite to soliciting and doing business in Taiwan as it related to military training. A Department of State ITAR Marketing License is required by Section 38 of the Arms Export Control Act (22 U.S.C. 2778, as amended) in order to discuss the export of "defense articles" such as military training.

28.     In December 2021, Global Dimensions used the Taiwanese accounting firm, Evershine, to establish a Global Dimensions representative office in Taipei, Taiwan, and Jim Noone, Plaintiff's Vice-President of Intelligence and International Business, was designated the Global Dimensions representative in Taiwan 2021.

29.     In August 2022, Mr. Noone made contact with Scott Ellinger, a former United States military officer who has been residing in Taiwan for the previous thirteen years. Through that contact, Mr. Noone explored the possibility of having Global Dimensions provide consulting

10

services to private and governmental entities in Taiwan. Mr. Noone then put Tackett in touch with Mr. Ellinger.

30.     On September 12, 2022, Taiwanese business owner and billionaire Robert Tsao pledged to spend up to $100 million to train Taiwan citizens to resist a potential Chinese invasion. This effort was publicly discussed on a YouTube video interview of Mr. Tsao. Understanding the potential business for Global Dimensions, Mr. Noone asked Mr. Ellinger if he could make a connection between Mr. Tsao and Plaintiff.

31.     In November 2022, Mr. Ellinger told Mr. Noone about two people associated with Mr. Tsao -- Raymond Lei (a.k.a. "Masa") and Lin Ping Yu (a.k.a. "Vincent"). Mr. Ping Yu is a Taipei City Councilman and also the Chairman of the committee which is advising Mr. Tsao on how to spend his $100 million pledge for obtaining training for Taiwanese civilians. Mr. Lei is the Secretary General of TTRDA and handles the business aspects of that organization, which is part of Mr. Ping Yu's committee and funded by Mr. Tsao.

32.     Prior to November 2022, Tackett had no knowledge of, or contacts with, Mr. Tsao, Mr. Ping-Yu, Mr. Lei or anyone from TTRDA.

**Global Dimensions Meets With and Solicits Business from TTRDA**

33.     In January 2023, Mr. Ellinger arranged for Global Dimensions to be invited to Taiwan to give a pitch to Mr. Tsao for the purpose of presenting a project for the training of Taiwanese citizens. As the current Director of Special Operations for Global Dimensions, Tackett was asked to attend the pitch to detail Plaintiff's capabilities in special operations and training. Again, Tackett did not previously know Mr. Tsao, Mr. Ping-Yu or Mr. Lei, and Tackett was only introduced to them through his employment with Global Dimensions.

34.     Ultimately, Mr. Ping-Yu scheduled a meeting in Taiwan between Global Dimensions and Mr. Tsao for March 10, 2023.

35.     On March 2, 2023, Mr. Noone, at Plaintiff's expense, had a company linguist translate Global Dimension's Program of Instruction (POI) brief into Chinese. The POI is Global Dimensions' instruction program, which is proprietary and confidential, that was implemented into the proposal presented to Mr. Tsao. Tackett assisted in the preparation of the POI and helped Global Dimensions create a pricing proposal, which was also presented to Mr. Tsao. At all such times, Tackett was acting as Global Dimensions' full-time employee and used Global Dimensions' signature block on e-mail communications concerning the creation of the POI and pricing proposal.

36.     Tackett and Mr. Noone arrived in Taiwan prior to the meeting with TTRDA and explored potential training facilities. Global Dimensions arranged and expensed this trip for both Tackett and Mr. Noone. Tackett and Mr. Noone also met with Mr. Lei to discuss TTRDA's training requirements and the anticipated budget.

37.     Tackett then worked with Mr. Newton to develop cost estimates/budgets to present to Mr. Tsao. Mr. Noone then sent a proposal to Evershine to turn the cost estimate/budget into a professional looking, two-page document to be utilized in the brief to Mr. Tsao. Global Dimensions paid $1,794 for that 2-page document.

38.     On March 9, 2023, Tackett and Mr. Noone met with Mr. Lei and Mr. Ping-Yu to discuss Plaintiff's proposal in advance of the March 10, 2023 meeting with Mr. Tsao. During that session, Mr. Noone told Mr. Lei and Mr. Ping-Yu that he would brief Mr. Tsao on Plaintiff's capabilities and background, and Tackett would discuss the specifics of the training plan.

39.     During a break, Tackett informed Mr. Noone that he had spoken privately to Mr. Lei, and that Mr. Lei thought Plaintiff's 12% commission fee was too high. Mr. Noone responded by stating this was not an issue because Mr. Newton had already agreed to lower the fee to 9%.

40.     On March 10, 2023, Tackett and Mr. Noone met with Mr. Tsao on behalf of Global Dimensions. Tackett never stated or otherwise indicated during this meeting that he was acting independent of his employment with Global Dimensions.

41.     Mr. Ping-Yu explained Plaintiff's proposal to Mr. Tsao in Chinese for 30-40 minutes. Mr. Tsao only asked a few questions, to which Mr. Ping-Yu responded. At the end of the meeting, Mr. Tsao looked at Mr. Noone and said, "Let's do It!" Mr. Noone later relayed this message to Evershine by email on March 10, 2023, thanking them for the presentation and confirming that Mr. Tsao wanted to work with Global Dimensions.

42.     At the end of the March 10, 2023 meeting, as Mr. Noone was walking out of the building, Mr. Lei told Mr. Noone that the companies' respective lawyers should get together to finalize the contract. In this regard, Mr. Lei specifically looked at Mr. Noone and said, "we need to get our lawyers together."

43.     Following the March 10, 2023 meeting, Mr. Newton and Mr. Noone reached out to TTRDA to ask about entering into a contract. TTRDA, however, did not immediately respond.

**Tackett Resigns His Employment and Solicits TTRDA for SOC-D**

44.     On March 21, 2023, Tackett tendered a Resignation Letter to Global Dimensions, effective March 31, 2023. *See* Resignation Letter, attached as **Exhibit D**.

45.     In his Resignation Letter, Tackett stated he is going to be a "direct consultant" for TTRDA through "my own company" – that is, SOC-D.  Before submitting his Resignation Letter, SOC-D, through Tackett, had entered into a LOI with TTRDA dated March 13, 2023. **Exhibit A**,

¶ 16; see also LOI, attached as **Exhibit E**. As such, Tackett's Resignation Letter came after he had already breached the terms of his Offer Letter and NDA.

46. When Global Dimensions discovered Tackett had used SOC-D to solicit work from TTRDA, Global Dimensions retained legal counsel and sent a letter dated March 27, 2023, reminding Tackett of his restrictive covenant obligations. *See* Cease and Desist Letter, attached as **Exhibit F**. Tackett never responded. Instead, Tackett continued to solicit business from TTRDA and set up visits to Poland for key personnel affiliated with TTRDA.

47. Indeed, Global Dimensions recently learned that, while he was still employed by Global Dimensions as a full-time employee, Tackett copied Global Dimensions' POI almost word-for-word, including confidential and propriety pricing information, training information and scheduling information, and included the same in a competing POI that he submitted to TTRDA on behalf of SOC-D, in violation of the confidentiality provisions in his Offer Letter and NDA. The competing POI, in turn, was relied upon by TTRDA in awarding SOC-D the LOI.

48. Tackett knew that Global Dimensions created its POI brief and budget for the purpose of soliciting business from Robert Tsao and TTRDA and knew that Plaintiff considered such information to be proprietary and confidential. Nonetheless, Tackett usurped Plaintiff's POI brief and budget for his own purposes and used the same to advance his own interests and those of SOC-D.

49. Global Dimensions reasonably fears it will lose or has already lost Robert Tsao and/or TTRDA as a client, as well as the potential for doing any future business with TTRDA, Mr. Tsao, the Taiwanese government and others in Taiwan given Tackett's reckless actions.

50. Tackett's use of Confidential/Proprietary Information during his employment with Global Dimensions to solicit TTRDA in order to benefit SOC-D is a clear contractual violation as

14

well as a violation of the law that has caused Global Dimensions significant monetary loss in the form of lost business opportunities.

## Tackett Engages in a Far-Reaching Smear Campaign

51.     Since the institution of this lawsuit, Tackett has engaged in a far-reaching smear campaign, repeatedly disparaging Global Dimensions and its CEO as well as it's VP of Intelligence and Overseas operations to multiple individuals in the United States and Taiwan, filing unsupported complaints with various United States Government and Taiwanese Government agencies, and otherwise attempting to destroy Plaintiff's business.

52.     These efforts include, but are not limited to: (i) disparaging and making false statements about Global Dimensions to TTRDA, Mr. Tsao, Mr. Lei and Mr. Ping-Yu; (ii) filing false complaints with the Inspector General's Office for the Department of Defense alleging improper conduct by Global Dimensions and/or Mr. Newton and/or Mr. Noone; (iii) providing false information to members of Congress including Sen. Thom Tillis and Rep. Dan Bishop; and (iv) contacting government officials in Taiwan in a retaliatory effort to generate investigations and inquiries into Plaintiff's activities in hopes that doing so will shut down Plaintiff's business.

53.     Amongst other things, Tackett has falsely accused Plaintiff, including Mr. Newton and Mr. Noone specifically, of disclosing "classified" information in the context of this lawsuit when, to the best of Plaintiff's knowledge, the material disclosed has never been given any classification level by any United States agency or branch of government. Indeed, information in this lawsuit such as the names and identity of individuals associated with TTRDA, and even the intent of the Taiwanese government to provide military training to its citizens, can readily be found on publicly available websites.

15

54.     Tackett has further wrongfully represented to TTRDA and others that Plaintiff is not authorized or capable of providing the military training referenced in the LOI when, in fact, Plaintiff has always been ready, willing and capable to do the same.

55.     Tackett has further wrongfully represented to TTRDA and others that Plaintiff is in a financially precarious position and would not be a good partner with whom to do business whereas Global Dimensions has a successful history with providing services and contracts to the US Government and its financial status is excellent.

56.     Tackett has further wrongfully encouraged members of the United States Congress to institute investigatory hearings against Plaintiff when no reasonable grounds exist for doing so.

57.     Tackett has further wrongfully encouraged individuals at the Taiwanese Ministry of Justice and Ministry of Economic Affairs to initiate penal proceedings against Plaintiff, alleging that Plaintiff has acted in violation of Taiwanese laws and regulation.

58.     Tackett has also wrongfully attempted to have Plaintiff's ITAR business license revoked, and have the security clearances of Mr. Newton frozen or removed simply because Plaintiff is pursuing the claims set forth in this lawsuit.

59.     Tackett openly admitted the foregoing disparagement in a May 23, 2023 affidavit that he filed with this Court. Notably, Tackett failed to include the specific names of the individuals to whom he spoke. Tackett also failed to include the specific words that he used when speaking to such individuals. The information contained in Tackett's affidavit, however, is sufficiently specific to demonstrate that Tackett has made the misrepresentations alleged herein.

60.     Plaintiff recently issued discovery requests to Plaintiff asking for Tackett to provide the specific names, dates and substances of the communications he had with the individuals

referenced herein. Plaintiff will amend this lawsuit further to provide such details when Tackett responds to the discovery requests.

61.     As a direct result of Tackett's subsequent smear campaign, Global Dimensions can also reasonably expect to lose future clients or work in Taiwan. The loss of such business will continue to cause Global Dimensions significant damages.

<u>**COUNT I**</u>

<u>**BREACH OF FIDUCIARY DUTY OF LOYALTY (TACKETT)**</u>

62.     The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

63.     Pursuant to Tackett's employment relationship with Global Dimensions, he was placed in a position of trust regarding Plaintiff's operations, customers, prospects, and Confidential/Proprietary Information.

64.     Based upon his employment relationship and position of trust with Global Dimensions, Tackett owed a fiduciary duty to act solely for Global Dimensions' benefit.

65.     Tackett used his access to Mr. Tsao and TTRDA which he obtained solely via Global Dimensions and was to pursue solely for its benefit, to persuade TTRDA to direct business to SOC-D. After succeeding in this plan, Tackett voluntarily resigned from Global effective March 31 2023.  In his resignation letter, Tackett declared intentions that confirm not only his unlawful conduct as to TTRDA, but also disclose Tackett's still broader pursuit of business opportunities to the exclusion of Global Dimensions.

66.     Upon information and belief, while still employed with Global Dimensions, Tackett acted in disregard of the non-solicitation and confidentiality covenants contained in his Offer Letter and NDA, and acted to disclose and/or will inevitably disclose or use Plaintiff's

Confidential/Proprietary Information for the benefit of Mr. Tackett and SOC-D including, but not limited to, soliciting TTRDA.

67. Tackett's conduct as alleged was willful and malicious and constitutes a breach of the fiduciary duty of loyalty that Tackett owed to Global.

68. As a direct and proximate result of Tackett's willful, malicious and intentional conduct, Global Dimensions has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

<u>**COUNT II**</u>

<u>**BREACH OF CONTRACT –CONFIDENTIALITY AND NON-DISCLOSURE**</u>
<u>**(TACKETT)**</u>

69. The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

70. On May 11, 2020, Tackett executed the Offer Letter and NDA, both of which contained confidentiality and nondisclosure clauses, for good and valuable consideration and as a condition of his employment.

71. Tackett had a duty to abide by the confidentiality and nondisclosure covenants in the Offer Letter and NDA.

72. Based on the actions described herein, Tackett breached his duty by using Confidential/Proprietary Information for the benefit of his own company, SOC-D, and soliciting TTRDA.

73. As a direct and proximate result of Tackett's wrongful conduct described herein, Global Dimensions has sustained and will continue to sustain immediate and irreparable harm and injury for which there is no adequate remedy at law.

18

74.     In addition to the irreparable injury described above, as a direct and proximate result of Tackett's wrongful conduct, Global Dimensions has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

75.     Global Dimensions is also incurring legal expenses to enforce the NDA and Offer Letter. Pursuant to the NDA's Governing Law and Equitable Relief clause, Global Dimensions is entitled to "payment of all legal expenses" to enforce the Agreements. Similar language is also included in the Offer Letter.

## COUNT III

## BREACH OF CONTRACT – NON-SOLICITATION (TACKETT)

76.     The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

77.     Tackett has a duty to abide by the non-solicitation covenant in his Offer Letter which is further defined by the "Term" provisions within the NDA.

78.     Based on the actions described herein, Tackett breached his duty under the Offer Letter by soliciting or diverting TTRDA's business away from Global Dimensions while Tackett was still employed by Global Dimensions.

79.     As a direct and proximate result of Tackett's wrongful conduct described herein, Global Dimensions has sustained and will continue to sustain immediate and irreparable harm and injury for which it has no adequate remedy at law.

80.     In addition to the irreparable injury described above, as a direct and proximate result of Tackett's wrongful conduct, Global Dimensions has suffered and/or will suffer actual

and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

81.     Global Dimensions is also incurring legal expenses to enforce the Offer Letter. Pursuant to language within the "Responsibility" section of the Offer Letter, Global Dimensions is entitled to payment "of all legal costs" to enforce the Agreement.

## COUNT IV

## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONSHIP AND PROSPECTIVE ECONOMIC ADVANTAGE (TACKETT AND SOC-D)

82.     The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

83.     Global Dimensions' relationship with Mr. Tsao and TTRDA is advantageous to Plaintiff. There existed a strong probability of future economic benefit to Global Dimensions from its business relationship with Mr. Tsao and TTRDA. Global Dimensions also had a reasonable expectation of future business with other persons and entities in Taiwan based on the relationships it had established.

84.     Tackett and SOC-D were aware of the foregoing business expectancies.

85.     Tackett, individually and through SOC-D, repeatedly contacted TTRDA in an attempt to intentionally interfere with Plaintiff's business relationship that once existed. Tackett also, individually and through SOC-D, disparaged Global Dimensions to other private and governmental individuals in Taiwan.

86.     Global Dimensions fears it has or will lose business with TTRDA, Mr. Tsao, and the U.S. Government as it relates to Taiwan and the Taiwanese Government.

87.     Global Dimensions further fears it has or will lose the opportunity to do future business in Taiwan.

88.     Tackett's and SOC-D's intentional wrongful conduct will disrupt the economic relationships between Global and any client in Taiwan including, but not limited to, Mr. Tsao and TTRDA.

89.     As a direct and proximate result of Tackett's and SOC-D's conduct, Global Dimensions has suffered damages in an amount to be determined at trial but not less than $10,000,000.

## COUNT V

## DEFAMATION (TACKETT AND SOC-D)

90.     The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

91.     Following his separation from Employment with Global Dimensions, Tackett individually and through SOC-D knowingly distributed or caused to be distributed to one or more persons statements that Plaintiff has violated classification laws, violated Taiwanese codes and regulations, was not licensed to perform work for TTRDA, was incapable of performing the services proposed to TTRDA, was dishonest and was otherwise unfit to perform the services it was proposing to TTRDA,

92.     The foregoing statements and those alleged herein are false and defamatory.

93.     At the time Plaintiff was proposing to perform services in Taiwan and at all times thereafter, Tackett individually and through SOC-D knew the foregoing statements were false or, in the alternative, failed to exercise ordinary care in order to determine whether such statements were false.

94.     Tackett individually and through SOC-D purposefully made the false statements regarding Plaintiff to prevent and discourage third parties from doing business with Plaintiff.

21

95.     As a direct and proximate result of Tackett's and SOC-D's defamation, Plaintiff has been damaged and is entitled to recover monetary relief in an amount in excess of $10,000,000.

96.     Tackett's and SOC-D's conduct was fraudulent, malicious, and willful and wanton such that an award of punitive damages is appropriate.

## COUNT VI

## UNFAIR AND DECEPTIVE TRADE PRACTICES, N.C. GEN. STAT. § 75-1.1 (TACKETT AND SOC-D)

97.     The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

98.     Following his separation from Employment with Global Dimensions, Tackett individually and through SOC-D engaged in unfair and deceptive acts or practices including, but not limited to: (a) making false and defamatory statements to Plaintiff's prospective customers, United States Government officials and Taiwanese Government officials; (b) tortiously interfering with Plaintiff's prospective economic advantages.

99.     Tackett's and SOC-D's conduct was in or affecting commerce.

100.    Tackett's and SOC-D's conduct was willful.

101.    As a direct and proximate result of Tackett's and SOC-D's unfair and deceptive acts or practices, Plaintiff has been damaged and is entitled to recover from Tackett and SOC-D monetary relief in an amount in excess of $10,000,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Global Dimensions, LLC prays for judgment as follows:

22

1.　　For damages in an amount according to proof at trial, including punitive and/or treble damages under N.C. Gen. Stat. § 75-16;

2.　　For restitution and/or disgorgement of all money, profits, compensation or property Tackett or SOC-D has acquired or will acquire by any wrongful or unlawful means or as a result of his or its breach of loyalty, breach of contract, and tortious interference;

3.　　All legal fees to enforce the NDA and Offer Letter;

4.　　For damages in an amount to be determined as appropriate to punish Tackett and SOC-D and deter like conduct;

5.　　For an order requiring Tackett to show cause, if any he has, why he should not be enjoined as set forth below, during the pendency of this action;

6.　　Preliminarily and permanently enjoin Tackett from possessing, using, or disclosing Plaintiff's Confidential/Proprietary Information on his own behalf or for the benefit of any entity, including but not limited to SOC-D or any future employer for as long as that information remains confidential and proprietary to Global Dimensions;

7.　　Preliminarily and permanently enjoin Tackett from working or providing services Mr. Tsao and TTRDA or otherwise engaging in any business dealings, whether directly or indirectly, with Mr. Tsao and TTRDA or any other client or potential client of Global Dimensions that Tackett was associated with while an employee of Global Dimensions;

8.　　For an order requiring Tackett to abide by the covenants in his Offer Letter and NDA, including the covenant of confidentiality, non-competition and non-solicitation, according to the terms set forth in the Offer Letter and NDA;

9.　　For prejudgment and post judgment interest at the maximum legal rate, as provided by the laws of the Commonwealth of Virginia and State of North Carolina, as applicable, as an

element of damages which Global Dimensions has suffered as a result of the wrongful acts complained of herein;

10. For reasonable attorneys' fees and costs, pursuant to N.C. Gen. Stat. § 75-16.1 and other applicable law; and

11. For such other and further relief as the Court may deem just and proper.

This the 28th day of June, 2023.

*/s/ S. McKinley Gray, III*
S. McKinley Gray, III
N.C. State Bar I.D. No.: 19939
email: docket@wardandsmith.com*
email: smg@wardandsmith.com **
Emily G. Massey
N.C. State Bar I.D. No.: 52283
email: EGMassey@wardandsmith.com**
For the firm of
Ward and Smith P.A.
Post Office Box 867
New Bern, NC 28563-0867
Telephone: 252.672.5476
Facsimile: 252.672.5477
*Local Civil Rule 83.1(d) Attorneys for Plaintiff*


/s/Timothy C. Bass
Timothy C. Bass
Virginia Bar No.: 40122
GREENBERG TRAURIG, LLP
1750 Tysons Blvd, #1000
McLean, Virginia 22102
Phone: (703) 749-1300
Fax: (703) 749-1310
basst@gtlaw.com

ND:4893-4264-4588, v. 1

24