IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00168-FL

| | |
|---|---|
| **Global Dimensions, LLC**, | |
| Plaintiff, | |
| v. | **Order** |
| **Randall Tackett & Special Operations Consulting and Development**, | |
| Defendants. | |

In this opinion, the court must balance one party's right to obtain relevant discovery against the need to prevent the disclosure of classified national security information. Plaintiff Global Dimensions, LLC, a defense and space consulting company, claims Defendant Randall Tackett used its confidential information to steal its potential clients while working for the company. To support its claims, Global Dimensions has asked Tackett to provide his computer for inspection and produce various documents and information.

Tackett claimed that responding to the discovery requests would require him to disclose classified information. He also maintains that some of the discovery requests seek irrelevant information. And he now says that the computer Global Dimensions wanted to inspect was destroyed by hostile forces while he was overseas on behalf of the United States.

Having considered the parties' arguments the court will require Tackett to respond to the discovery requests. Tackett has failed to adequately support his claim that his discovery responses would reveal classified information. Moreover, he has not shown that Global Dimensions' discovery requests involve irrelevant matters. So the court will grant Global Dimensions' motion to compel.

I.      Background

Tackett began working for Global Dimensions in May 2020. Am. Compl. ¶¶ 3, 5. But before beginning his job, Tackett signed an Offer Letter and Non-Disclosure Agreement that prohibited him from competing against Global Dimensions, disclosing the company's confidential information, or using that information for his own purposes. *Id.*

Yet Global Dimensions claims Tackett did all those things. It alleges that while he worked for the company, Tackett convinced one of its potential clients, Taiwan Mil & Le Tactical Research and Development Association ("TTRDA"), to sign a letter of intent with his company, Defendant Special Operations Consulting and Development, LLC ("SOC-D"). *Id.* ¶ 45. That letter of intent was dated March 13, 2023. Am. Compl. Ex. E at 6, D.E. 58–5. Global Dimensions maintains that Tackett used its confidential and proprietary information to craft the proposal that TTRDA accepted. *Id.* ¶ 47. According to Global Dimensions, six days after TTRDA signed the letter of intent Tackett submitted his letter of resignation. *Id.* ¶¶ 44, Ex. D.

In response, Global Dimensions sued Tackett for breaching the terms of his employment agreements and for breaching a fiduciary duty he allegedly owed to his former employer. Compl. *passim*, D.E. 1. And it later amended its complaint to include claims for defamation and various economic torts. Am. Compl., D.E. 58. It also sought a preliminary injunction prohibiting Tackett from soliciting its customers and using or disclosing its confidential information. Mot. for Prelim. Inj., D.E. 3.

Tackett opposed Global Dimensions' request for injunctive relief. To rebut its allegations, he referred to a May 8, 2020 email from Global Dimensions' CEO, Chris Newton. Mem. in Opp. to Mot. for Prelim. Inj. at 4, D.E. 18. In that email, Newton acknowledges that Tackett had his own company and that Tackett would retain "all rights to [his] company and network[.]" *Id.*

2

Tackett's response also asserted that he sent Newton a resignation letter dated January 26, 2023, before any meeting with TTRDA occurred. *Id.* at 5. And he claims that he sent another resignation letter on March 19, 2023. *Id.* at 7.

Global Dimensions says that Tackett fabricated both the May 8, 2020 email and the January 26, 2023 resignation letter. Mem. in Supp. of Mot. to Compel at 3, D.E. 78. It asserts that a forensic analysis showed that the PDF version of the January 26, 2023 resignation letter was created on March 27, 2023, and modified the next day. *Id.* And it points out that the cover email for that resignation letter was dated as Tuesday, January 28, 2023, but that date fell on a Saturday. *Id.* at 3–4. What's more, a forensic examination of Global Dimensions' computer system turned up no evidence that the May 8, 2020 email and the January 26, 2023 email "were ever sent to or received by the relevant Global Dimensions email accounts." *Id.* at 4.

Given these findings, Global Dimensions requested that Tackett produce the computer he used to create and send the email for forensic examination.[1] *Id.* at 4. He responded by seeking a protective order prohibiting Global Dimensions from examining his computer. Mot. for Prot. Order, D.E. 30.

Tackett asserted that he could not turn over his computer or allow Global Dimensions' expert to examine it because "it contained classified government information he is obligated to keep confidential." *Id.* ¶ 7. He said that on his computer are "particles of data which a person or entity can piece together to qualify as classified government operational information." Mem. in Supp. of Mot. for Prot. Order at 5, D.E. 31. He also claims that the United States government

---

[1] It appears that Global Dimensions first made this request informally during correspondence between counsel, but later served a formal request to inspect Tackett's computer under Federal Rule of Civil Procedure 34. Mot. for Prot. Order ¶¶ 5–7; Resp. to Mot. for Prot. Order Ex. B., D.E. 63–2.

3

installed "proprietary software" on his computer. *Id.* And, according to Tackett, his claim to possess classified information is supported by the fact that the United States Special Operations Command "installed a facility" known as a SCIF "in [his] home to retain and protect information on his operating system." *Id.*; Second Suppl. Aff. of Randall Tackett ¶ 5, D.E. 29.

Tackett, however, would produce the computer for inspection under certain circumstances. He said that he "has sought and received authorization to provide [his] computer to the Joint Special Operations Command (JSOC) entity responsible for digital forensics, and the entity is willing to perform [Global Dimensions'] requested search and confirmation of authenticity of the several emails in question." Second Suppl. Tackett Aff. ¶ 14. But Tackett asserted that "JSOC cannot properly conduct its search to confirm authenticity without equal access" to the computer Newton used when the emails were supposedly sent. *Id.* ¶ 15. And finally, Tackett claims that "JSOC has informed [him] that he would be required to have the JSOC digital forensics entity wipe clean [his] hard drive before any unauthorized people or entities can conduct a search of [his] computer." *Id.* ¶ 16. Global Dimensions rejected this proposal.

Global Dimensions also filed its own discovery-related motion. Mot. to Compel, D.E. 77. The company had served Tackett with a formal request to inspect his computer as well as written discovery requests, and it believed his responses were inadequate. *Id.* ¶¶ 4–7. Tackett objected to the requests, claiming they required the disclosure of classified information. *Id.* ¶ 7. He also challenged whether the requests sought relevant information. *Id.* Global Dimensions asked the court to require Tackett to permit inspection of his computer and supplement his discovery responses. *Id.*

4

In light of the claims that the discovery requests involved classified information, the court sought the United States' input on three issues. Sept. 8, 2023 Order, D.E. 93. First, whether Global Dimensions' discovery request would require the production of or access to classified information. *Id.* ¶ 2(a). Second, whether a protective order was necessary to govern the production and use of classified information. *Id.* at 2(b). And third, whether Tackett's statements related to JSOC were true. *Id.* ¶ 2(c).

The United States' response confirmed that Tackett had access to classified information. D.E. 118. But the government was unable to definitively say whether the discovery requests implicated classified or protected information. *Id.* at 1–2. And it could not determine the validity of Tackett's statements related to JSOC. *Id.* at 3. The United States sought more time, until November 10, 2023, to continue looking into this matter. *Id.* at 2.

Two days after the United States responded, Tackett notified the court he wished to withdraw his motion for a protective order. Notice of Withdrawal, D.E. 119. According to the notice, the computer Global Dimensions wished to inspect had been destroyed by "malicious elements" while he was abroad on behalf of the United States. *Id.* ¶ 10. Tackett apparently told the United States that the computer's destruction resulted from an Unmanned Aerial Vehicle attacking his vehicle while he was in the Middle East. United States Suppl. Resp. ¶ 22. The United States could not determine whether this statement was true. *Id.*

Despite Tackett's notice, Global Dimensions continued to seek an order requiring production of the computer or an order requiring Tackett to allow a forensic examination of his cloud accounts that may contain the email. Resp. to Notice of Withdrawal, D.E. 131 at 1–2. It also continued to seek an award of fees and costs for its work in connection with Tackett's motion. *Id.* at 2.

The United States submitted its final response to the court's inquiries in November 2023. To gather the information to address the court's questions, several conversations took place.

To begin with, a Command Judge Advocate with JSOC spoke with Tackett. *Id.* ¶ 16. During this conversation, Tackett said, "that the SCIF he referred to in his Affidavit was not actually a physical structure. Rather it was a government computer he previously turned back into the military." *Id.* ¶ 17. And he shared that "the classified information contained on his computer was a collection of open-source intelligence (OSINT) 'crumb information' that when compiled would become classified." *Id.* Tackett "stated he received the programs to conduct OSINT from an active-duty Lieutenant Colonel David Strysko with the United States Army. Mr. Tackett also identified Mike Dodson, a contractor with Special Operations Command, as the person from Joint Special Operations Command who relayed they could conduct digital forensics on his computer." *Id.*

Then the United States then spoke with Lieutenant Colonel Strysko. Strysko recalled meeting Tackett briefly in Poland in late 2022 or early 2023. *Id.* ¶ 18. During that meeting, Tackett discussed "possibly providing training to the United States military." *Id.* "Strysko believed Mr. Tackett was misrepresenting who he was, who he knew, and who he represented." *Id.* Strysko had no other interactions with Tackett and "[a]t no point did Lt Col Strysko provide Mr. Tackett with any digital tools or software." *Id.*

Next, the United States contacted Dodson. He recounted that he worked with Tackett from "spring to summer of 2022[.]" *Id.* ¶ 19. But "[a]t no point did Mr. Dodson discuss digital forensic analysis of computers with Mr. Tackett." *Id.* And "[a]t no point did he offer to have JSOC review Mr. Tackett's computer." *Id.*

6

Finally, the United States spoke with Melissa Acworth, "the Chief of Information Security for JSOC at Fort Liberty, North Carolina." *Id.* ¶ 21. Acworth "explained that Special Operations Command would never provide anyone software or equipment to store classified information on an individual's personal computer or systems." *Id.* She then "clarified they would provide government software for government equipment, computers or systems and would only allow the storage of classified information on the government equipment or systems." *Id.*

The United States then addressed the questions posed by the court. *Id.* at 13. As for the questions related to Tackett's computer, it believed those questions were mooted by the computers supposed destruction. *Id.* And with respect to whether Tackett's other statements were true, beyond sharing what it had learned through its investigation, it took no position on that question. *Id.*

Despite the alleged destruction of Tackett's computer, his repeated claims that he cannot disclose documents or information because of their classified nature continued to impact this litigation. So the court ordered the parties to confer with the United States to develop a protective order that would address a process for resolving disputes over classified information and procedures for the use and handling of any classified information. Jan. 10, 2024 Order, D.E. 156. That proposed order has not yet been submitted.

Global Dimensions has recently sought to have the court sanction Tackett, dismiss his counterclaims, and enter a default judgment against him. D.E. 166. It claims that in addition to the factual inconsistencies described above, it has evidence that Tackett lied to the court about his whereabouts in November 2023 in an affidavit and fabricated a letter that was purportedly from the CIA to support a motion. D.E. 166, 167.

After those issues were brought to light, the parties jointly requested that the court stay this action until it rules on the sanctions motion. D.E. 171. The court agreed to stay all aspects of this proceeding, except for certain pending matters. D.E. 173, 174.

II.     Discussion

At first the parties filed competing discovery motions: Tackett sought a protective order and Global Dimensions sought to compel Tackett to respond to discovery. But Tackett withdrew his motion before the court ruled on it, rendering it a nullity. So there is nothing left for the court to do but terminate that motion. Global Dimensions has not withdrawn its motion to compel, however. And having reviewed that motion, the court concludes that Tackett must produce the requested items as he has not shown that they are classified or that they seek irrelevant information.

A.     **Tackett's Motion for Protective Order**

Tackett's protective order motion sought entry of a protocol for the exchange of classified or highly sensitive information, a requirement that various individual submit their computers for inspection, and order that those computers be submitted to JSOC for a forensic evaluation. Mot. for Prot. Order at 6–7. He has since withdrawn that motion. Notice of Withdrawal at 4.

Courts appear to have unanimously held that once a party withdraws a motion, it is as if the motion has never been filed. *Gardiner* v. *Walmart, Inc.*, No. 20-CV-04618, 2021 WL 2520103, at *11 (N.D. Cal. Mar. 5, 2021); *Gunn* v. *Drage*, No 2:19-CV-02102, 2020 WL 7889080, at *3 (D. Nev. Dec. 23, 2020), *vacated on other grounds*, 65 F.4th 1109 (9th Cir. 2023); *Donohue* v. *CBS Corp.*, No. 17-CV-07232, 2018 WL 179315 (S.D.N.Y Apr. 6, 2018); *Larson* v. *Harman-Mgmt. Corp.*, No. 1:16-CV-00219, 2018 WL 3326695, at *1 (E.D. Cal. Mar.

22, 2018); *Jiminez* v. *Thor Motor Coach, Inc.*, No. 1:16-CV-01927, 2017 WL 3085015, at *1 (E.D. Cal. Apr. 12, 2017); *Kennedy Krieger Inst., Inc.* v. *Brundage Mgmt. Co.*, Civ. No. WDQ-14–1680, 2015 WL 926139, at *3 n.18 (D. Md. Mar. 3, 2015); *BCJJ, LLC* v. *LeFevre*, No. 8:09–CV–551, 2012 WL 3262866, at *2 (M.D. Fla. Aug. 8, 2012); *Davis* v. *United States*, No. CV-07–0481, 2010 WL 334502, at *2 (C.D. Cal. Jan. 28, 2010); *Caldwell-Baker Co.* v. *S. Ill. Railcar Co.*, 225 F. Supp. 2d 1243, 1259 (D. Kan. 2002); *Remley* v. *Lockheed Martin Corp.*, No. C00–2495CRB , 2001 WL 681257, at *3 (N.D. Cal. June 4, 2001). Given that consensus, and the lack of any authority to the contrary from Global Dimensions, the Clerk of Court shall terminate the motion. Since an award of fees is only appropriate under Rule 37 when a court resolves a discovery motion, the court will not award Global Dimensions any fees related to the protective order.[2]

### B. Global Dimensions' Motion to Compel

Global Dimensions' motion to compel, however, remains pending. In that motion, the company challenges Tackett's refusal to allow inspection of his computer and respond to discovery because of concerns over classified information. And it claims that his relevance-based objections to its written discovery requests are meritless.

The Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). For discovery, the scope of "relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D.

---

[2] This does not, however, preclude Global Dimensions from pursuing a fee award under some other rule or statute.

9

238, 240 (E.D.N.C. 2010) (quoting *Oppenheimer Fund., Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978)).

The Rules also allow a requesting party to move to compel if the responding party's discovery responses are incomplete or inadequate. Fed. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection*, 270 F.R.D. at 241. To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

### 1. Request to Submit Supplemental Materials

Tackett has requested that in resolving this motion, the court consider transcripts from depositions that occurred after the motion's filing. D.E. 128. The court denies that request since the materials as described are not relevant to the court's resolution of the motion.

### 2. Objection Based on Classified Nature of Documents[3]

Tackett objected to Global Dimensions' request to inspect his computer as well as Interrogatories 5, 6, 7, and 9 because they may result in the disclosure of classified information. As noted above, since Tackett is the party attempting to avoid producing the requested information, he bears the burden of showing that the information is classified. *Mainstreet Collection*, 270 F.R.D. at 241.

Executive Order 13,526 created a "uniform system for classifying, safeguarding, and declassifying national security information[.]" Exec. Order No. 13,526, 75 Fed. Reg. 707, 707 (2009). Under that order, information may be classified only if four conditions are met. First, "an

---

[3] This issue was briefed in connection with Tackett's protective order motion. But Global Dimensions incorporated those arguments in its brief in support of its motion to compel. Mem. in Supp. of Mot. to Compel at 2 n.2.

10

original classification authority" must classify the information. *Id.* Second, it must be established that "the information is owned by, produced by or for, or is under the control of the United States Government[.]" *Id.* Third, the information falls into one of several categories specified in Section 1.4 of the order. *Id.* And fourth, "the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security . . . and the original classification authority is able to identify or describe the damage." *Id*.

Tackett has failed satisfy these conditions for the items and information Global Dimensions requested. They are not discussed—or even mentioned—in his response to Global Dimensions' motion or in his now-withdrawn protective order motion. And the record lacks any sworn statements from government officials supporting Tackett's claims on this issue. Tackett's credibility is in serious question at this point, so his statements alone are both insufficient and unconvincing. Thus, his objections based on the potential need to disclose classified information are overruled.

        **3.**        **Interrogatory 1**

Interrogatory 1 effectively seeks Tackett's work history from January 1, 2020, until the present. Interrog. 1, D.E. 63–3 at 5. Global Dimensions claims it needs the information to assess the extent of "Tackett's improper solicitation of and provision of services to [its] clients and prospective clients[.]" Mem. in Supp. of Mot. to Compel. at 8. It recognized that Tackett has identified some of the places he worked. *Id.* But it claims his response is incomplete because an entity that he did not list informed Global Dimensions that he worked for it while working for Global Dimensions. *Id.* at 9.

11

Tackett responds that this request does not seek information about Global Dimensions' existing claims, but seeks to obtain information about "the possibility that Tackett solicited unknown and unidentified customers wholly unrelated to its claim before this Court." Resp. in Opp. to Mot. to Compel at 7–8.

The court finds that the requested information is relevant. To begin with, a party's employment history is the type of general background information that can be used for any number of purposes during civil litigation. And the court agrees with Global Dimensions that exploring Tackett's employment history could provide more insight on the actions he took to solicit TTRDA and the way he went about doing it. Given the broad scope of relevance during discovery, the court orders Tackett to respond to this request.

### 4. Interrogatory 2

Global Dimensions' second interrogatory seeks information about all contracts and similar documents that Tackett "obtained or helped procure between January 1, 2020 and the present" for any entity or individual, including Global Dimensions and SOC-D. Interrog. 2, D.E. 63–3 at 5. As with its first interrogatory, Global Dimensions says the information sought by this request is "directly related to the improper solicitation of [its] clients and prospective clients." Mem. in Supp. of Mot. to Compel at 9. It also notes that Tackett has submitted an affidavit in response to its motion for a preliminary injunction that states that while he was employed with Global Dimensions, his company "unilaterally pursued and executed contracts." *Id.* (quoting Tackett Aff. ¶ 11, D.E. 13–1). Tackett again responds that this request seeks information that goes beyond the Amended Complaint's claims. Resp. in Opp. to Mot. to Compel at 8.

The court finds that the requested information is relevant. To begin with, Tackett placed those matters at issue when he discussed them in his response to Global Dimensions' request for

12

a preliminary injunction and his supporting affidavit. Resp. in Opp. to Mot. for Prelim. Inj. at 4, D.E. 13; Tackett Aff. ¶ 11, D.E. 13–1. And information about Tackett's other business dealings while employed with Global Dimensions has repeatedly come up during this litigation. So, given the broad view of relevance in the discovery context, Tackett has not shown that the requested information is not relevant to the claims and defenses here. The court orders Tackett to respond to this request.

### 5. Interrogatories 5, 6, and 7

This group of Interrogatories seeks information about operations Tackett is performing for the United States Special Operations Command, whether he has a government-approved SCIF in his home, and various information about the nature and contents of a computer Tackett owns. According to Global Dimensions, this information is necessary for it to respond to Tackett's Motion for a Protective Order because it relates to items Tackett included in an affidavit supporting that motion. In response, Tackett claims this information is irrelevant to Global Dimensions' claims. Resp. in Opp. to Mot. to Compel at 8–9.

While Tackett has withdrawn the protective order motion the court still concludes this information is relevant and thus discoverable. Although these issues arose in the context of the protective order motion, they are sure to arise again if this case proceeds. The entire reason that Global Dimensions wished to inspect Tackett's computer was to determine whether the May 8, 2020 email and January 26, 2023 resignation letter—documents that are no doubt relevant to the claims and defenses here—were fabricated. And, if Tackett is to be believed, that inspection is no longer possible because the computer has been destroyed. Its destruction occurred before the inspection took place because of the delay caused by Tackett's various claims about his work for the United States and his access to classified information. Global Dimension has a right to

13

explore the issues raised in these requests so that it can be prepared to address any concerns the finder of fact may have about why it did not inspect Tackett's computer promptly. These requests bear on issues that are relevant to the claims and defenses here. Moreover, Tackett's credibility has become a prominent issue and these requests seek information related to that topic. So Tackett must fully respond to these requests.

### 6. Interrogatory 8

Next Global Dimensions seeks to compel Tackett to respond to an interrogatory that requires him to identify the individuals at JSOC who he allegedly spoke with about conducting a forensic examination of his computer. Interrog. 8, D.E. 63–3 at 8. The discovery request also seeks various information about those conversations. *Id.* Tackett claims that he has "provided more than enough identifiable information" for Global Dimensions to investigate his claims "without compromising the security of individuals that may be overseeing" that examination. Resp. in Opp. to Mot. to Compel at 9.

Given the court's view on Tackett's claims that the discovery requests seek classified information, this response is inadequate. Tackett has not met his burden of showing that he can refuse to respond to this request. He must supplement his response to provide all requested information.

### 7. Interrogatories 10, 11, and 12

These interrogatories seek information related to conversations Tackett claims to have had with various government officials as outlined in his May 23, 2023 Affidavit. Global Dimensions argues that this information is "directly at issue in [its] defamation and unfair and deceptive trade practices claim[.]" Mem. in Supp. of Mot. to Compel. at 10. And the company asserts that the information became "relevant when Tackett" filed an affidavit "claiming to have

14

initiated investigations against Global Dimensions with various governmental entities." *Id.* (citation omitted). Tackett claims he has provided all the requested information. Resp. in Opp. to Mot. to Compel at 10.

Tackett is incorrect. While he provided *some* of the requested information in his Second Supplemental Responses, he failed to fully respond. So he must supplement his responses again.

In Interrogatory 10, Global Dimensions requests Tackett identify who within the United States government told him that he was the only person or entity authorized as a United States government officer in Taiwan during negotiations related to TTRDA. Interrog. 10, D.E. 63–3 at 9. It also wants to know when the communication occurred, how it occurred, and the content of the communication. *Id.*

Tackett's response spanned several documents. At first, his response included two redacted names. Resp. to Interrog. 10, D.E. 88–3 at 26–27. He later supplemented that response to say that he communicated with David Strysco by phone "as recently as August 6, 2023." Second Suppl. Resp. to Interrog. 10, D.E. 88–5 at 6. That conversation "confirmed" that "SOC-D has a classified waiver that covers it" for activities in Taiwan and beyond. *Id.* It also identified where that waiver could be found. *Id.* Tackett says that by providing this information, he has "provided all requested information[.]" Mem. in Opp. to Mot. to Compel at 10.

The court disagrees. Tackett's supplemental response does not provide any information about the second person listed in his initial response. And his response that communication occurred "as recently as August 6, 2023" leaves open the possibility that there was more than one communication and that any communications may have taken place on dates other than August 6, 2023. Tackett must supplement his response to provide all responsive information.

Interrogatory 11 asks Tackett to provide the name of the person who interviewed him from the Department of Defense's Inspector General Office in response to filings he made with that office about Global Dimensions. Interrog. 11, D.E. 63–3 at 9. It also wants to know when the interview occurred, who else attended, and the case numbers for Inspector General Action Request reports allegedly discussed during the interview. *Id.*

Tackett says he provided the individual's name who conducted the interview, lacks knowledge of the names of anyone else who attended, and identified the departments conducting the investigation. Resp. in Opp. to Mot. to Compel at 10. This appears to be true, but he did not identify when the conversation occurred or the requested case numbers. Resp. to Interrog. 11, D.E. 63–6 at 27–30. Thus Tackett's response is insufficient and he must supplement it. If he does not know the case numbers, he must say so.

Lastly, in Interrogatory 12, Global Dimensions seeks the identity of the Taiwanese officials Tackett referred to in his affidavit. Interrog. 12, D.E. 63–3 at 9. It also wants to know when he communicated with them, how the communication occurred, and the content of the communications. *Id.*

As with Interrogatory 10, Tackett's response developed over time. At first, he identified three people by their positions only. Resp. to Interrog. 12, D.E. 88–3 at 31–32. He later identified, by name, two individuals with the Taiwanese Ministry of Justice and one individual with the United States government, provided the date he spoke with the Taiwanese officials, and the manner of communication. Second Suppl. Resp. to Interrog. 12, D.E. 88–5 at 7–8. He also provided the way he communicated with the United States official. *Id.*

In response to Global Dimensions' motion, Tackett says the company "is free to contact these individuals and subpoena documents or engage in any other investigation it so desires."

16

Resp. in Opp. to Mot. to Compel at 10. That's not how federal discovery works. Tackett must provide all dates he spoke with the United States official, as well as the content of his communications with all three individuals.

### 8. Request for Production 16, 17, 18, 19, 20, 21, and 22

These requests all seek documentation about Tackett's ability to receive classified information, whether Tackett's computer qualifies as a SCIF, whether the United States has placed proprietary software on his computer, and whether he has had communications with JSOC or other government officials about examining his computer. Tackett claims this information is irrelevant to Global Dimensions' claims. Resp. in Opp. to Mot. to Compel at 9.

As with Interrogatories 5, 6, and 7, these request all bear on issues related to relevant documents Tackett allegedly fabricated. They seek relevant materials for the same reason. Tackett must provide the requested documents.

### 9. Request for Inspection of Tackett's Computer.

Global Dimensions requested Tackett produce his computer for inspection.[4] Mem. in Supp. of Mot. to Compel at 4. In response, Tackett filed the now-withdrawn protective order motion. And the court has overruled his classified information objection. Tackett now lacks any basis to withhold the computer and must produce it.

The task of producing the computer, however, is complicated by Tackett's claim that hostile forces destroyed the computer. The court cannot require the production of a computer that does not exist. *Mach. Sols., Inc.* v. *Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 537 (D.S.C. 2018); *Patterson* v. *Stirling*, No. CV-2:22–03183-BHH-MGB, 2023 WL 9231375, at *3 (D.S.C.

---

[4] Federal Rule of Civil Procedure 34 provides that a court may require a party produce designated documents or electronically stored information, and any designated tangible things. Fed. R. Civ. P. 34(a)(1).

Jan. 9, 2023) ("As an initial matter, the Court cannot order the production of photographs that do not exist.").

Yet the United States has been unable to confirm Tackett's claim. United States Suppl. Resp. ¶ 22. And several of his other representations to the court have been called into serious question. Thus something more than just Tackett's word is necessary to satisfy his obligations under the Federal Rules. So Tackett must either produce the computer or provide official documentation from the United States government establishing that it was destroyed.

If Tackett cannot produce the computer, he must provide copies of the computer's data preserved because of the Agreed Preservation Order entered on May 18, 2023. D.E. 39 at 1. That order compelled the parties to maintain and preserve all documents and electronically stored information responsive to Global Dimensions' complaint, motion for preliminary injunction, and discovery requests served by the parties on April 28, 2023. D.E. 39 at 1. If the data was not preserved, he must notify Global Dimensions and the court of that fact.

### 10. Award of Attorney's Fees

Global Dimensions requested that the court require Tackett to pay its reasonable expense, including attorneys' fees, that it incurred in making this motion. Tackett did not respond to this portion of the company's motion. Given the outcome of its motion and the course of the proceedings, the court concludes that Global Dimensions is entitled to the relief it seeks.

The Federal Rules provide for the shifting of costs and fees associated with a discovery motion in some cases. If the court grants a motion to compel, it "must" require the responding party, or its attorneys, to pay the movant's "reasonable expenses incurred" in connection with the motions. Fed. R. Civ. P. 37(a)(5)(A). The same rule applies if a party produces the requested documents or information after the filing of a motion to compel. *Id.* An award of expenses can

18

include the payment of attorney's fees. *Id.* The only exceptions to these rules are if the moving party "filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" the non-moving party's actions were "substantially justified;" or "other circumstances make an award of expenses unjust." *Id.* The non-moving party has a right to be heard before the court decides whether cost-shifting is appropriate. *Id*.

Both parties had the opportunity to address this issue in their briefs. Tackett, however, did not do so. Thus he has not shown that any of the exception to the general requirement of cost shifting apply. So Global Dimensions is entitled to recover all of the reasonable expenses, including attorneys' fees, it incurred in making the motion.

Having considered the circumstances of this motion, the court finds that Tackett and his counsel will be jointly and severally liable for payment of these costs and fees. Tackett's counsel told the court that he heavily relied on Tackett's representations in formulating the responses and objections to Global Dimensions' discovery requests. Nov. 27, 2023 Hr. Tr. at 6:2–8:1. The court will enter a separate order outlining the process for determining that amount.

### III. Conclusion

For all these reasons, the court grants Global Dimensions' motion to compel. D.E. 77. Tackett must supplement his responses within 14 days of the entry of this order. But given the potential national security concerns related to the release classified information the court will, out of an abundance of caution, allow Tackett to withhold any materials or information that he believes, in good faith, are classified, until the court issues the protective order on classified materials or otherwise orders him to do so. The court will enter a separate order to determine the amount of fees and costs Tackett and his counsel owe to Global Dimensions related to this motion.

The court also denies Tackett's motion to supplement his response to the motion to compel. D.E. 128.

And the Clerk of Court must terminate Tackett's Motion for a Protective Order (D.E. 30).

Dated: February 7, 2024

_____
Robert T. Numbers, II
United States Magistrate Judge

20

Case 5:23-cv-00168-FL   Document 176   Filed 02/07/24   Page 20 of 20