UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

GLOBAL DIMENSIONS, LLC, - Docket No. 5:23-cv-168-FL
-
Plaintiff, - New Bern, North Carolina
- February 6, 2025
v. - Motion Hearing
-
RANDALL TACKETT, et al., -
-
Defendants. -
--------------------------------

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Plaintiff: Ward and Smith, P.A.
By: Emily Gray Massey
751 Corporate Center Drive
Suite 300
Raleigh, NC 27607
(919) 277-9168

Ward and Smith, P.A.
By: Samuel McKinley Gray, III
PO Box 867
1001 College Court
New Bern, NC 28563-0867
(252) 672-5400

For the Defendants: Van Camp, Meacham & Newman, PLLC
By: Thomas M. Van Camp
2 Regional Circle
Pinehurst, NC 28374
(910) 295-2525

Also Present: Federal Public Defender
By: Snayha M. Nath
150 Fayetteville St., Suite 450
Raleigh, NC 27611-5967
(919) 856-4236

Court Reporter: Tracy L. McGurk, RMR, CRR
413 Middle St.
New Bern, NC 28560
(419) 392-6626

Proceedings recorded by mechanical stenography, transcript produced by notereading.

(Commenced at 3:05 p.m.)

THE COURT: Good afternoon.

Madam clerk, would you call the case, please.

THE CLERK: The Court calls for hearing Global Dimensions, LLC, v. Randall Tackett and Special Operations Consulting and Development, LLC, case number 5:23-cv-168-FL.

THE COURT: And for Plaintiff, would you introduce yourselves on the record.

MS. MASSEY: Yes, Your Honor. My name is Emily Massey, counsel for Plaintiff, with the firm of Ward & Smith.

MR. GRAY: And S. McKinley Gray, III, also with Ward & Smith.

THE COURT: Welcome, both.

MR. VAN CAMP: Tom Van Camp for the defendants from Pinehurst; Van Camp, Meacham & Newman.

THE COURT: I was hoping Mr. Tackett would be here today.

MR. VAN CAMP: He is in his storage unit searching for more medals.

THE COURT: I understand.

MR. VAN CAMP: But he's doing better; he's stable; he's not -- it's not because of medical issues.

THE COURT: Very good.

In the audience, Ms. Nath, I'd like to note your appearance, at least your attendance here today. I understand that you have been appointed to represent Mr. Tackett in the criminal matter.

MS. NATH: Yes, Your Honor. Good afternoon.

THE COURT: Thank you.

Well, in the civil case I have some things to address here today. I'd like to start with Defendant's motion to dismiss the remaining counterclaims filed on the docket at entry number 276. That motion is allowed.

There is a motion to seal at docket entry number 266. That motion is allowed.

There are two motions for sanctions. And interestingly, the way our system has captured both the redacted versions and the motions themselves, each one is separately recognized as a pending motion. But, of course, docket entry number 260 is the redacted version of the actual motion at 263, and docket entry number 261 is the redacted version of the motion at 264. I'd ask the clerk to take up with the powers to be whether the system really needs to recognize both motions and count them separately, as it appears to me it does.

Or am I wrong in the way I read the docket, Ms. Collins?

THE CLERK: They are recognized as pending motions given the manner in which they were filed. It would be easy to terminate one or the other of the motions if the Court desires to do so.

THE COURT: Well, let's terminate, because they really aren't the focus, what's been filed on the docket as the redacted versions. So the hammer comes down on 260 and 261.

And let me turn my attention to 263, where Plaintiff, at the time Plaintiff filed its amended complaint, I find had a reasonable basis in law and in fact for its claims. I do not conclude that Plaintiff violated Rule 11(b), and I do deny the motion for sanctions at 263.

And with regard to the one at 264, which is made pursuant to the Court's inherent powers, so too that motion is denied.

So the hammer is taken away for other reasons from 263 and 264.

So what does that leave us with? It leaves us with the motion to stay, and it also leaves us with the motion for attorney's fees, which is sort of just dangling out there.

I have stayed the Defendant's response to Plaintiff's petition filed August 1st of 2024 seeking a very significant amount of money for making a second motion to compel, in excess of $75,000. I said I would take it up at the end of the case. I'll give the Defendant a chance to respond, and then I'll make a decision.

And I recall counsel for Plaintiff asked the Court if Plaintiff should also submit a petition for attorney's fees granted February 7th of 2024. And I said we've got to keep the case moving. We've got to focus on the substance of it. We can take care of the fee issues as we wrap it up. And so we've got a stay, in essence, already in effect in a limited focus.

So now the stay that is before me, the request that was made by Plaintiffs, Defendant does oppose. And I've seen some updated discovery responses. And I'm sure the Plaintiff is appreciative of that.

And I have heard now that your client is in a storage unit looking for more responsive information.

And I want to find a piece of paper before I say anything else. Let me get a little bit of method to my organization up here on the bench.

I wanted to come on the bench with an

understanding of really what the stay request is embracing. So your discovery already closed on January 10th. So what's going on right now? Are we done? Getting done? Close to done? Are we done? What do you think? I assume so, because you didn't ask for a continuance of the February 7th deadline. But maybe that was part of your motion to stay.

MS. MASSEY: Yes, Your Honor. Emily Massey for the Plaintiff. Yes, the purpose of the stay is to stay the February 7th dispositive motion deadline and trial pending the outcome of the criminal action.

Discovery did close on January 10th; however, we were not made aware of the criminal action until December 16th, which was after -- within less than 30 days. So we requested from the Defendants that they produce any discovery exchange in the criminal action.

THE COURT: Okay. You've got your answer to that. So I think discovery is closed. Okay. Because I saw that. He can't give you anything because Ms. Nath says no.

MS. MASSEY: Well, we're not aware of what objections Ms. Nath has. We have not received those objections.

THE COURT: Well, Ms. Nath has some constitutional objections, I think you could reasonably

assume. We're not going to litigate those in the civil matter.

Your discovery is over and done with. You didn't ask for a dispositive motions extension, so I'm assuming there are no dispositive motions because there's a genuine issue of material fact, and you wouldn't likely get a win on a Rule 56.

So what you're asking me to stay, I think, is the trial. Right?

MS. MASSEY: Yes, Your Honor. But the defendants have indicated that they are going to file a motion for summary judgment. And we believe that the discovery in the criminal action and the outcome of the criminal action will impact our response to their motion for summary judgment.

THE COURT: Are you making a motion for summary judgment, sir?

MR. VAN CAMP: Absolutely. Yes, Your Honor. It was ready last Friday. But in light of the Court's order and this hearing, we have held off. But we intend to, if permitted, to file it on -- tomorrow. It would be the deadline.

THE COURT: Well, what's the scope of it? Everything?

MR. VAN CAMP: The scope is the fact that

there was no funding, and so -- which has nothing to do with the criminal case. That the government -- basically the United States Government and the Taiwanese Government, for different reasons, have said nothing was ever going to happen. So there's the ITAR issue.

And then we have absolute privilege on the defamation claim as well.

So it is very important to note, Your Honor, that we are -- we understand the Court's issue with Mr. Tackett's credibility. So there is not a single piece of testimony or document that we are going to rely on in summary judgment with him. It is the Plaintiffs, their experts, third parties, and the United States Government. So I'm staying completely away from anything where Your Honor would have to say: Well, I'd have to believe Mr. Tackett in order to rule in the Defendant's favor.

THE COURT: Okay.

MR. VAN CAMP: So we have desperately waited a long time for this day and time because we believe this is the tale of two cases; one is the merits, and one is Tackett. And I think they can exist separately.

And I don't see anything in the criminal case that's going to move the ball on what we're going to file for summary judgment.

So I do agree that -- I think the best approach would be the Court rule on summary judgment, look at summary judgment. If something is left and we have some constitutional issues, we revisit the stay issue at that point. That would be our position, Your Honor.

MS. MASSEY: Your Honor, if I may respond.

THE COURT: I may have another question for him. You can be seated. I'll get to you.

In parts of your filing to date, I thought I might hear a request that you withdraw as counsel at this point in time given that you haven't been paid and the significance of that amount. Is this something, as I see sometimes in cases, where the motion gets filed, and then there's another motion to withdraw?

MR. VAN CAMP: No. Absolutely not. I may be a witness based on my conversations with government officials in the criminal case, and I don't know how that pans out here, depends on what gets admitted. That would be the only reason I would withdraw.

I fully understand and appreciate that I'm the only one working on this case in my firm because no one is getting paid. And that's -- I'm going to do that. So I am not going to file motions and walk. I'm going to stick with Mr. Tackett. And, you know,

that's my job.

THE COURT: Okay.

Now, you wanted to respond?

MS. MASSEY: Yes, just briefly regarding not filing any information from Mr. Tackett. All of the evidence filed by Defendants is from Defendant. For example, one of the letters that are at issue in the criminal action were filed by Defendants and are from third parties purportedly. So for Mr. Van Camp to say they're going to file a motion for summary judgment with third-party evidence, well, there are documents that were filed by Defendants purportedly from third parties that have -- that the charges that are pending is in regard to fraudulently affixing the seal of the United States Government, as Your Honor knows. So our contention is it will be duplicative arguments in opposing the motion for summary judgment regarding the authenticity and the admissibility of evidence. I just wanted to make that point.

MR. GRAY: Yeah, Your Honor, and a finer point is that while Mr. Tackett is the one that is subject to the criminal proceedings, Mr. Van Camp is the one that filed all those filings. And he is the one that's filing this expected summary judgment filing. And there is serious credibility issues with two out of

the three folks that he's relying upon.

And so as you accurately pointed out, we made the determination that it would be absolutely a waste of the Court's time for us to file a motion for summary judgment because -- I won't say there's a genuine issue of material fact, but there are issues of fact that have been created as issues because of the misconduct of Defendant Tackett.

THE COURT: Okay.

MR. GRAY: And, Your Honor, one other thing. You may recall you asked the question, I believe it was the last time we were here in person when we were talking about those *Touhy* responses from the government. And you actually said, if this gets to trial, how are you going to authenticate them? And that is really the crux of why we would like this stay. Because to authenticate them, we're going to have to try to drag in people from Washington D.C. into the Court. And obviously that jacks up the expenses for our client. Mr. Tackett may be getting free legal services both in the civil and criminal matter, but our client is not.

THE COURT: Right.

MR. GRAY: And that will add significant costs. And they have said that they're going to file a summary judgment. That means that we would have to

file a response, and then they'll have the cost of filing a reply. And then Your Honor is going to deny their motion, because there's clearly issues of material fact.

THE COURT: Well, you know, it's a little hot air to say what I'm going to do. So why don't we just stop it right now, because I see your point. And that's really what I thought the point was of the motion to stay, which is stay the trial.

MR. GRAY: Right. And then, if I may, on another parallel reason. Not only does it -- we can't -- if the civil case goes forward to trial, and the criminal case is not concluded, and even in summary judgment we can't use that indictment as evidence, but we can use criminal convictions of dishonesty. And so that is one piece that would save the Court's resources because of this: Judge, we also have a client that operates a business, a legitimate business, and has spent a lot of money.

THE COURT: I was quite aghast to think that a motion to compel would cost $75,000. I was quite aghast at that.

But you can go ahead and be seated. Thank you.

The motion to stay is granted in the part

that there's not going to be a trial in this civil case. If there is a trial, it's not going to go forward while the criminal case is pending.

However, I'm not staying the dispositive motions deadline. And whatever happens tomorrow, it just happens, and I'll take it up and decide it. Whether Mr. Gray's prophecy is true or not, we shall see. But I think that's the thing to do.

And I think that's about it. Anything else? Anything from your side of the room to talk about?

You know, the deadline is also the deadline to make motions to exclude expert witness testimony. Can you remind me; are there experts?

MR. GRAY: Yes, Your Honor, there are.

MS. MASSEY: Yes.

THE COURT: So you have some experts?

MR. VAN CAMP: We have one.

THE COURT: Remind me who that person is.

MR. VAN CAMP: His name is Daniel Norick. He opines on these two emails that they contend Mr. Tackett fabricated, and they have an expert from Virginia.

THE COURT: Competing experts?

MR. GRAY: Not really.

MR. VAN CAMP: Well, not really. To be frank, we don't have the resources to get that kind of thing done. But our expert simply says there's other possibilities.

THE COURT: Is there going to be any motion to exclude expert testimony?

MS. MASSEY: Yes, we will file the motion tomorrow.

MR. VAN CAMP: Not from us.

THE COURT: And what's your basis?

MS. MASSEY: That he is not qualified as an expert and that he has not relied on evidence and that his opinions are speculative and would confuse the jury.

THE COURT: Is that an expert that you'll be relying on in your motion for summary judgment?

MR. VAN CAMP: No, absolutely not.

THE COURT: I'm not adverse to just carving out a different deadline for that motion so that you don't have to make it by tomorrow. But if you've already got it prepared, go ahead and file it. What is your preference?

MS. MASSEY: That would save me some time this evening.

THE COURT: Save your client some money. I mean, if you're not going to rely on that person for

00:19:24 summary judgment, I could take that up if the case goes forward to trial, and give you a new deadline for filing that motion.

MS. MASSEY: Yes, that would help with efficiencies and attorneys' fees, Your Honor.

THE COURT: Let me make sure I'm not just opening this door. Is there any other motion for an expert that you would be filing then?

MS. MASSEY: No, not on Plaintiff's side.

THE COURT: So give us the name so I can write an order after this hearing that says I'm going to give you a new deadline for filing that motion.

MS. MASSEY: The expert witness's name is Daniel Norick, N-o-r-i-c-k.

THE COURT: Is that okay with you?

MR. VAN CAMP: That's perfectly fine.

THE COURT: That way you don't have to respond to it.

MR. VAN CAMP: I could use a break.

THE COURT: I think that is an efficiency that both sides benefit from. And frankly, it's one less motion in the hopper.

The answer would be different if you told me you were going to rely on him.

MR. VAN CAMP: To clarify, I'm not relying

on anything from the *Touhy* request. Those are not the third parties.

THE COURT: We're going to see tomorrow, aren't we? So we'll wait until then.

Now, is there anything else in this civil matter that I can take up now that could be helpful? Can you think of anything?

MS. MASSEY: No. Your Honor addressed the floating attorneys' fees; we had the motion for show cause, attorney fees issues, and Your Honor said you're going to wait to address those.

It would be helpful for us to have information from the criminal discovery of the criminal action, including Mr. Tackett's allegations that he is financially indigent. We don't have that information.

THE COURT: That's sealed. His responses to the Criminal Justice Act affidavit, I think that's what you're asking for, which a magistrate judge became satisfied, based on his reading of that, that the Defendant was entitled to court appointed counsel.

You know, I don't really know how you're going to get that. But if you want to try to, I'm certainly not telling you you can't try. But there's some pretty weighty considerations as far as disclosing that. I don't even think the government gets to see it

in a criminal case. I might be wrong. But I don't think the government attorney gets to see that.

MR. GRAY: Your Honor, we understand from the filing in the criminal docket -- and obviously we're not extremely well versed.

THE COURT: Can you see that on the docket?

MR. GRAY: We can see the criminal docket.

MS. MASSEY: We can see the criminal docket, but we can't --

THE COURT: You can't see the CJA --

MR. GRAY: And there was an entry that indicated that his attorney had received discovery from the government. Is that something that would be sealed that we wouldn't be able to get that?

THE COURT: There is a scheduling order that required that -- well, you all can see it. It's the order in the criminal case that refers to --

MR. GRAY: We are aware that the arraignment is April 15th, I believe, and that the case has been transferred to Your Honor. And that's about what we know.

Mr. Van Camp had represented to us that even though we had made the request in discovery for that criminal discovery that the public defender was coming, and she was not going to allow it to be turned over

until at least this hearing, if Your Honor were to order that.

THE COURT: Ms. Nath, do you want to come on up and take a seat at the table?

MS. MASSEY: Just to clarify, because under the Eastern District of North Carolina, the civil discovery rule of possession, custody, or control includes your attorney has control of the documents.

THE COURT: Well, he doesn't have control of them.

MS. MASSEY: But Mr. Tackett does, technically, if his attorney does. And there are many cases where criminal and civil cases -- the civil case is stayed so that the parties can exchange discovery between civil and criminal cases.

And again, like Mr. Gray indicated, we don't practice law in the criminal area. But based on my research and reading these cases, it looks like that is something that happens, unless there is a Fifth Amendment objection raised, which has not yet been raised.

MR. GRAY: And, Your Honor, I do understand the right not to incriminate yourself. And so it may be that we cannot get the discovery that Mr. Tackett would produce in the criminal matter, but are we not

entitled to the discovery from the government that the government has provided to Mr. Tackett?

MS. MASSEY: And would make it more efficient in the civil case in regard to information we have sought regarding the same issues.

THE COURT: Well, I don't have an answer.

Ms. Nath, is there anything you wanted to say?

MS. NATH: I understand I'm in a bit of an odd position, as I'm not a party to this case at all. I think the Court correctly assumed what my concerns would be in terms of disclosure. I was hoping for some guidance from this Court so I can proceed efficiently with my criminal representation, candidly.

THE COURT: Well, let me start with this. I can appreciate where defense counsel in the criminal case would probably have an interest in looking at the sealed matters in the civil case. Is there any -- and correct me if I'm wrong, but I don't think the Plaintiff has a dog in that fight. You haven't sealed anything on your own.

MR. GRAY: Nothing that belongs to us. We may have sealed stuff that belonged to the other side because the Court had not released it. But we would have no objection to her seeing anything that was under

seal in this case.

THE COURT: Let me start with that.

Counsel in the civil case, do you have any objection, where you share the client, do you have any objection to his criminal attorney being given the sealed material in the civil case?

MR. VAN CAMP: I do not.

THE COURT: Okay. So, Madam Clerk, I don't know if that's something you can serve, or if it's just better for me to enter an order and let you collect it. You would like me to enter an order?

THE CLERK: Yes, ma'am.

THE COURT: In the civil case, the criminal defense attorney can receive the sealed material that is filed to date and any -- well, let's just say filed to date. Because I don't know what's going to come in in the future.

And, Ms. Nath, I'll put that in writing, and I guess that gives you enough to get it.

MS. NATH: Understood. Thank you, Your Honor.

THE COURT: So that's one side of the equation.

Now, the Plaintiff wants what the government has given the Defendant. And I don't have a government

00:28:05 attorney here. And they may have a dog in the fight. I don't know. So I think if you want it, you've got to go to the criminal case to try to get it. That would be my initial thought.

MR. GRAY: Your Honor, again, because we don't practice on the criminal side of things, when you say "go to the criminal case," what do you mean by that? I mean, wait and see what comes out in the criminal case? Is that what you're suggesting?

THE COURT: I think you could -- I'm just trying to think how you could make a formal request in that case and give everybody the chance in that case to chew on your request, which would be not the civil defense attorney, but the criminal defense attorney and the government.

I don't think I'm going to make it an obligation of Mr. Tackett in the civil case to give you the criminal discovery. That's just kind of where I am right now.

MR. GRAY: And I'm, for clarification purposes, trying to figure out what this mechanism looks like. Do we subpoena the prosecutors?

THE COURT: I think what I'm going to do is to establish a schedule for this. I need to establish the schedule in the criminal case. So why don't you

wait for me to give you a written direction in writing that I file in the criminal case. How about that?

MR. GRAY: Okay. And then that leads to a question I had actually in my mind before this came up. Your Honor has said we're going forward with dispositive motions, which we understand. They'll file their motion; we'll file a response; they'll file a reply. Then it will be pending for the Court's determination.

At that point is the case stayed until the resolution of the criminal trial?

THE COURT: Yes.

MR. GRAY: I just wanted -- we just want to make sure we were explaining to our client exactly what to expect going forward.

THE COURT: With the grace that I've given, which is the other type of motion, which I now know is limited to a single motion that would otherwise be due, that is continued. And I'll put all that in a short order that you'll be able to show your client.

MR. GRAY: And so once Your Honor has ruled upon the motion for summary judgment, assuming that the criminal trial has not actually concluded, then we're just -- the case is going to be stayed, if Your Honor has denied their -- if there any claims that survive, then this case is stayed? That's what you're saying?

THE COURT: Correct. And there's a lot of precedent for that. Though these facts are quite unique.

Do you have anything you'd like to say about that vehicle that I've said needs to be driven into the criminal case in a way that I'm going to decide and publish on the docket in the criminal case that will or will not promote your client's criminal discovery coming into the civil case? Do you have any?

MR. VAN CAMP: I would rely on Ms. Nath. I haven't seen it, and I don't know if it's good, bad, or indifferent. And my client doesn't have a copy of it. So I'm going to rely on her to possess --

THE COURT: Okay.

MR. VAN CAMP: It's a different --

THE COURT: Are you okay with that, Ms. Nath, kind of the way I see this going? I don't think he's responsible for giving the Plaintiff -- even responding to the Plaintiff's request in this case for what you're getting in the criminal case.

MS. NATH: Yes, Your Honor. I was kind of holding off on even discussing discovery with my client pending resolution of the discovery issue in the civil case. It would assist my representation on the criminal side to have assurances that were I to provide

him a copy, as the Court has already pointed to, or, under common interest, if I were to review it with it his civil counsel, that that would not result in disclosure in the civil case. It's just an odd position where discussing sort of common interest materials could lead to an adverse disclosure, in which case I wouldn't want to do it.

THE COURT: Is there any other protection you would be wanting to get from me that would allow you to communicate as you might wish in defense of Mr. Tackett?

MS. NATH: I think the Court was clear that there wouldn't be any sort of civil disclosure obligations were I to provide Mr. Tackett with a copy. I just was not sure what the parameters of that would be with respect to common interests if his lawyer had it.

THE COURT: They've got to get it through the criminal case. And whether that's subpoenaing the U.S. Attorney -- it could well be. I think Ms. Collins might have some experience with that from her memory bank.

MR. GRAY: I may consult with Ms. Collins, Your Honor.

THE COURT: No. She can't give you any legal advice.

00:34:04 MR. GRAY: One question I did have, because you're trying to ponder what the mechanism would be, would it be appropriate for us to appear at the arraignment on April 15th and make that request? And then the government's attorneys are going to be there, the public defender will be there, and if they have an objection to producing the government's portion of what it turned over to the Defendant in that case, then they can make that objection. And then the judge -- I assume it would be the magistrate judge would be the one doing the arraignment.

THE COURT: No. I don't think that would be appropriate.

You can appear certainly as a member of the public. And if, in that case, something has evolved and you somehow are on the record and have something pending, or say the government fights your subpoena. I don't know. I mean, perhaps I could see there being something happening there that would involve you. But to just show up and orally try to make a motion; no, that wouldn't work.

MR. GRAY: Okay, Your Honor. I understand.

THE COURT: But that's in April. And really, those things usually get continued. The first setting very rarely, in my experience, is there an

arraignment. But there may be in this case.

So this is an interesting situation here for several reasons. My stay doesn't reach this -- what we're talking about, you trying to get the documents that he is getting in the criminal case, even though I've said I think you've got to focus on getting it from those sources. I'm saying you can do that. So I probably need -- I mean, I think that's been obvious in what I've been talking about. But now that I think about it, that is another exception to the stay.

MR. VAN CAMP: That they are permitted to try through the criminal case to get these documents?

THE COURT: Yes. But you're out of it. Because like I said, you don't have any dog in that fight.

MR. VAN CAMP: Understood.

THE COURT: I'm going to put an order together after this hearing that will relieve Ms. Collins in that she can not have to worry about being precise in her docket entry. The precision will come through my words spoken here but as memorialized in writing.

And I will also memorialize, obviously, in that order, I think, you getting the sealed dockets of record, sealed entries.

Now, anything else from your side of the room?

MR. GRAY: No, Your Honor.

THE COURT: How about from yours?

MR. VAN CAMP: No, Your Honor.

THE COURT: I'm going to ask Ms. Nath to stay. And I'm going to go into an ex parte under seal very short matter in the criminal case. So we're going to switch hats here. And now let me have a few minutes just to talk to Ms. Nath in the other case. But I'll say goodbye to the three of you. Safe travels.

MR. GRAY: Thank you, Your Honor.

MR. VAN CAMP: You're going to get me home in time for my wife's birthday dinner.

(Discussion had off the record.)

THE COURT: I'm very glad that we could get you on the road. It would have been earlier, but the civil commitment matter was supposed to be two days, and I just told them I'll give you until 3:00. And they settled it this morning; he agreed to be committed. If I had known, I would have seen you earlier. But enough said.

(Concluded at 3:44 p.m.)

\- - -

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Tracy L. McGurk_______ ___9/18/2025___

Tracy L. McGurk, RMR, CRR Date

## $

**$75,000** [2] - 6:4, 13:21

## /

**/s** [1] - 29:7

## 1

**1001** [1] - 1:17
**10th** [2] - 7:3, 7:12
**11(b** [1] - 5:15
**150** [1] - 1:23
**15th** [2] - 18:19, 26:4
**16th** [1] - 7:14
**1st** [1] - 6:2

## 2

**2** [1] - 1:20
**2024** [2] - 6:2, 6:10
**2025** [1] - 1:5
**252** [1] - 1:18
**260** [2] - 4:20, 5:10
**261** [2] - 4:21, 5:10
**263** [4] - 4:21, 5:11, 5:16, 5:21
**264** [3] - 4:22, 5:17, 5:21
**266** [1] - 4:15
**276** [1] - 4:12
**27607** [1] - 1:14
**27611-5967** [1] - 1:24
**277-9168** [1] - 1:15
**28374** [1] - 1:21
**28560** [1] - 2:2
**28563-0867** [1] - 1:18
**295-2525** [1] - 1:21

## 3

**30** [1] - 7:15
**300** [1] - 1:14
**392-6626** [1] - 2:2
**3:00** [1] - 28:19
**3:05** [1] - 3:1
**3:44** [1] - 28:23

## 4

**413** [1] - 2:1
**419** [1] - 2:2
**450** [1] - 1:23

## 5

**56** [1] - 8:7
**5:23-cv-168-FL** [2] - 1:4, 3:8

## 6

**6** [1] - 1:5
**672-5400** [1] - 1:18

## 7

**751** [1] - 1:13
**7th** [3] - 6:10, 7:6, 7:10

## 8

**856-4236** [1] - 1:24
**867** [1] - 1:17

## 9

**9/18/2025** [1] - 29:7
**910** [1] - 1:21
**919** [2] - 1:15, 1:24

## A

**able** [2] - 18:14, 23:19
**above-entitled** [1] - 29:4
**absolute** [1] - 9:6
**absolutely** [4] - 8:18, 10:16, 12:3, 15:16
**accurately** [1] - 12:2
**Act** [1] - 17:17
**action** [7] - 7:11, 7:13, 7:16, 8:13, 8:14, 11:8, 17:14
**actual** [1] - 4:21
**add** [1] - 12:23
**address** [2] - 4:10, 17:11
**addressed** [1] - 17:8
**admissibility** [1] - 11:18
**admitted** [1] - 10:19
**adverse** [2] - 15:17, 25:6
**advice** [1] - 25:25
**affidavit** [1] - 17:17
**affixing** [1] - 11:14
**afternoon** [2] - 3:2, 4:7
**aghast** [2] - 13:20, 13:22
**agree** [1] - 10:1
**agreed** [1] - 28:20
**ahead** [2] - 13:23, 15:20
**air** [1] - 13:6
**al** [1] - 1:7
**allegations** [1] - 17:14
**allow** [2] - 18:25, 25:9
**allowed** [2] - 4:13, 4:15
**amended** [1] - 5:12
**Amendment** [1] - 19:20
**amount** [2] - 6:3, 10:13
**answer** [3] - 7:17, 16:23, 20:6
**appear** [2] - 26:3, 26:14
**appearance** [1] - 4:3
**APPEARANCES** [1] - 1:11
**appointed** [2] - 4:4, 17:20
**appreciate** [2] - 10:21, 20:16
**appreciative** [1] - 6:18
**approach** [1] - 10:2
**appropriate** [2] - 26:3, 26:13
**April** [3] - 18:19, 26:4, 26:23
**area** [1] - 19:17
**arguments** [1] - 11:16
**arraignment** [4] - 18:18, 26:4, 26:11, 27:1
**assist** [1] - 24:24
**assume** [3] - 7:5, 8:1, 26:9
**assumed** [1] - 20:11
**assuming** [2] - 8:5, 23:21
**assurances** [1] - 24:25
**attendance** [1] - 4:3
**attention** [1] - 5:11
**attorney** [10] - 17:10, 18:2, 18:12, 19:8, 19:12, 21:5, 21:14, 22:1, 22:14
**Attorney** [1] - 25:19
**attorney's** [2] - 5:24, 6:10
**attorneys** [1] - 26:5
**attorneys'** [2] - 16:5, 17:9
**audience** [1] - 4:2
**August** [1] - 6:2
**authenticate** [2] - 12:15, 12:17
**authenticity** [1] - 11:18
**aware** [3] - 7:13, 7:21, 18:18

## B

**bad** [1] - 24:11
**ball** [1] - 9:24
**bank** [1] - 25:21
**based** [3] - 10:17, 17:19, 19:17
**basis** [2] - 5:13, 15:10
**became** [1] - 17:18
**BEFORE** [1] - 1:10
**belonged** [1] - 20:23
**belongs** [1] - 20:22
**bench** [2] - 6:24, 6:25
**benefit** [1] - 16:21
**Bern** [3] - 1:5, 1:18, 2:2
**best** [1] - 10:1
**better** [2] - 3:24, 21:10
**between** [1] - 19:15
**birthday** [1] - 28:14
**bit** [2] - 6:23, 20:9
**Box** [1] - 1:17
**break** [1] - 16:19
**briefly** [1] - 11:4
**business** [2] - 13:18

## C

**Camp** [7] - 1:19, 1:20, 3:17, 3:18, 11:9, 11:22, 18:22
**CAMP** [22] - 3:17, 3:21, 3:24, 8:18, 8:25, 9:19, 10:16, 14:18, 14:20, 15:1, 15:9, 15:16, 16:16, 16:19, 16:25, 21:7, 24:10, 24:15, 27:11, 27:16, 28:5, 28:13
**candidly** [1] - 20:14
**cannot** [1] - 19:24
**captured** [1] - 4:17
**care** [1] - 6:12
**CAROLINA** [1] - 1:1
**Carolina** [2] - 1:5, 19:6
**carving** [1] - 15:17
**case** [53] - 3:3, 3:7, 4:9, 6:5, 6:11, 9:2, 9:24, 10:18, 10:22, 13:12, 13:13, 14:2, 14:3, 16:1, 18:1, 18:17, 18:19, 19:13, 20:4, 20:10, 20:17, 20:18, 21:1, 21:3, 21:6, 21:13, 22:3, 22:7, 22:9, 22:12, 22:17, 22:25, 23:2, 23:9, 23:23, 23:25, 24:6, 24:7, 24:9, 24:19, 24:20, 24:24, 25:4, 25:7, 25:18, 26:8, 26:15, 27:1, 27:5, 27:12, 28:8, 28:10
**cases** [6] - 9:21, 10:14, 19:13, 19:15, 19:18
**Center** [1] - 1:13
**certainly** [2] - 17:23, 26:14
**certify** [1] - 29:3
**chance** [2] - 6:6, 22:12
**charges** [1] - 11:13
**chew** [1] - 22:13
**Circle** [1] - 1:20
**civil** [23] - 4:9, 8:1, 12:21, 13:12, 14:2, 17:5, 19:6, 19:13, 19:15, 20:4, 20:18, 21:3, 21:6, 21:13, 22:13, 22:17, 24:9, 24:23, 25:3, 25:4, 25:13, 28:18
**CJA** [1] - 18:10
**claim** [1] - 9:7

**claims** [2] - 5:14, 23:24
**clarification** [1] - 22:20
**clarify** [2] - 16:25, 19:5
**clear** [1] - 25:12
**clearly** [1] - 13:3
**clerk** [2] - 3:3, 4:23
**Clerk** [1] - 21:8
**CLERK** [3] - 3:5, 5:3, 21:12
**client** [10] - 6:20, 12:19, 12:21, 13:17, 15:24, 21:4, 23:13, 23:19, 24:12, 24:22
**client's** [1] - 24:8
**close** [2] - 7:4, 7:12
**closed** [2] - 7:2, 7:18
**collect** [1] - 21:10
**College** [1] - 1:17
**Collins** [4] - 5:2, 25:19, 25:22, 27:19
**coming** [2] - 18:24, 24:8
**commenced** [1] - 3:1
**commitment** [1] - 28:18
**committed** [1] - 28:20
**common** [3] - 25:2, 25:5, 25:16
**communicate** [1] - 25:10
**compel** [2] - 6:4, 13:21
**competing** [1] - 14:24
**complaint** [1] - 5:13
**completely** [1] - 9:14
**concerns** [1] - 20:11
**conclude** [1] - 5:14
**Concluded** [1] - 28:23
**concluded** [2] - 13:13, 23:22
**confuse** [1] - 15:13
**considerations** [1] - 17:24
**constitutional** [2] - 7:25, 10:4
**consult** [1] - 25:22
**Consulting** [1] - 3:7
**contend** [1] - 14:21
**contention** [1] - 11:16
**continuance** [1] - 7:6
**continued** [2] - 23:18, 26:24
**control** [3] - 19:7, 19:8, 19:9
**conversations** [1] - 10:17
**convictions** [1] - 13:15
**copy** [3] - 24:12, 25:1, 25:14
**Corporate** [1] - 1:13
**correct** [3] - 20:19, 24:1, 29:3
**correctly** [1] - 20:11
**cost** [2] - 13:1, 13:21
**costs** [1] - 12:24
**counsel** [7] - 3:12, 6:8, 10:11, 17:20, 20:16, 21:3, 25:3
**count** [1] - 4:24
**counterclaims** [1] - 4:12
**course** [1] - 4:20
**COURT** [64] - 1:1, 3:2, 3:9, 3:16, 3:19, 3:23, 4:1, 4:8, 5:7, 7:17, 7:24, 8:16, 8:23, 9:18, 10:8, 11:2, 12:9, 12:22, 13:5, 13:20, 13:25, 14:17, 14:19, 14:24, 15:5, 15:10, 15:14, 15:17, 15:24, 16:6, 16:10, 16:15, 16:17, 16:20, 17:3, 17:16, 18:6, 18:10, 18:15, 19:3, 19:9, 20:6, 20:15, 21:2, 21:8, 21:13, 21:22, 22:10, 22:23, 23:11, 23:15, 24:1, 24:14, 24:16, 25:8, 25:17, 25:24, 26:12, 26:23, 27:13, 27:17, 28:4, 28:6, 28:16
**court** [1] - 17:20
**Court** [12] - 1:17, 2:1, 3:5, 5:6, 6:9, 10:2, 12:18, 20:11, 20:13, 20:24, 25:1, 25:12
**Court's** [6] - 5:18, 8:19, 9:9, 12:4, 13:16, 23:8
**created** [1] - 12:7
**credibility** [2] - 9:10, 11:25
**criminal** [50] - 4:5, 7:11, 7:13, 7:16, 8:13, 8:14, 9:2, 9:23, 10:18, 11:8, 11:22, 12:21, 13:13, 13:15, 14:3, 17:13, 18:1, 18:4, 18:7, 18:8, 18:17, 18:24, 19:13, 19:15, 19:17, 19:25, 20:14, 20:16, 21:5, 21:13, 22:3, 22:6, 22:7, 22:8, 22:14, 22:18, 22:25, 23:2, 23:10, 23:22, 24:6, 24:7, 24:8, 24:20, 24:25, 25:18, 27:5, 27:12, 28:8
**Criminal** [1] - 17:17
**CRR** [2] - 2:1, 29:8
**crux** [1] - 12:16
**custody** [1] - 19:7

## D

**D.C** [1] - 12:18
**dangling** [1] - 5:25
**Daniel** [2] - 14:20, 16:14
**Date** [1] - 29:8
**date** [3] - 10:10, 21:15, 21:16
**days** [2] - 7:15, 28:18
**deadline** [9] - 7:6, 7:10, 8:22, 14:5, 14:12, 15:18, 16:2, 16:12
**December** [1] - 7:14
**decide** [2] - 14:6, 24:6
**decision** [1] - 6:7
**defamation** [1] - 9:7
**Defendant** [7] - 6:6, 6:16, 11:6, 12:8, 17:20, 21:25, 26:8
**Defendant's** [3] - 4:11, 6:1, 9:17
**Defendants** [6] - 1:8, 1:19, 7:15, 11:6, 11:8, 11:12
**defendants** [2] - 3:18, 8:11
**Defender** [1] - 1:22
**defender** [2] - 18:24, 26:6
**defense** [5] - 20:16, 21:14, 22:14, 25:10
**denied** [2] - 5:19, 23:24
**deny** [2] - 5:15, 13:2
**desires** [1] - 5:6
**desperately** [1] - 9:19
**determination** [2] - 12:3, 23:8
**Development** [1] - 3:7
**different** [4] - 9:4, 15:18, 16:23, 24:15
**DIMENSIONS** [1] - 1:4
**Dimensions** [1] - 3:6
**dinner** [1] - 28:14
**direction** [1] - 23:1
**disclosing** [1] - 17:24
**disclosure** [4] - 20:12, 25:4, 25:6, 25:13
**discovery** [19] - 6:17, 7:2, 7:12, 7:16, 7:18, 8:3, 8:13, 17:13, 18:12, 18:23, 18:24, 19:7, 19:14, 19:24, 20:1, 22:18, 24:8, 24:22, 24:23
**discussing** [2] - 24:22, 25:5
**Discussion** [1] - 28:15
**dishonesty** [1] - 13:15
**dismiss** [1] - 4:11
**dispositive** [5] - 7:10, 8:4, 8:5, 14:4, 23:5
**DISTRICT** [3] - 1:1, 1:1, 1:10
**District** [1] - 19:6
**DIVISION** [1] - 1:2
**docket** [12] - 4:12, 4:14, 4:20, 4:21, 5:1, 5:9, 18:4, 18:6, 18:7, 18:8, 24:7, 27:20
**Docket** [1] - 1:4
**dockets** [1] - 27:24
**document** [1] - 9:11
**documents** [4] - 11:11, 19:8, 27:4, 27:12
**dog** [3] - 20:20, 22:1, 27:14
**done** [6] - 7:3, 7:4, 8:3, 15:3
**door** [1] - 16:7
**down** [1] - 5:10
**drag** [1] - 12:17
**Drive** [1] - 1:13
**driven** [1] - 24:5
**due** [1] - 23:17
**duplicative** [1] - 11:16

## E

**Eastern** [1] - 19:6
**EASTERN** [1] - 1:1
**easy** [1] - 5:5
**effect** [1] - 6:14
**efficiencies** [1] - 16:5
**efficiency** [1] - 16:20
**efficient** [1] - 20:4
**efficiently** [1] - 20:13
**emails** [1] - 14:21
**embracing** [1] - 7:2
**Emily** [3] - 1:13, 3:12, 7:8
**end** [1] - 6:5
**enter** [2] - 21:10, 21:11
**entitled** [3] - 17:20, 20:1, 29:4
**entries** [1] - 27:25
**entry** [6] - 4:12, 4:14, 4:20, 4:21, 18:11, 27:20
**equation** [1] - 21:23
**essence** [1] - 6:14
**establish** [2] - 22:24
**et** [1] - 1:7
**evening** [1] - 15:23
**evidence** [5] - 11:6, 11:11, 11:18, 13:14, 15:12
**evolved** [1] - 26:15
**ex** [1] - 28:7
**exactly** [1] - 23:13
**example** [1] - 11:7
**exception** [1] - 27:10
**excess** [1] - 6:4
**exchange** [2] - 7:16, 19:14
**exclude** [2] - 14:13, 15:6
**exist** [1] - 9:22
**expect** [1] - 23:14
**expected** [1] - 11:24
**expenses** [1] - 12:19
**experience** [2] - 25:20, 26:25
**expert** [8] - 14:13, 14:22, 15:3, 15:6, 15:12, 15:14, 16:8, 16:13
**experts** [4] - 9:13, 14:14, 14:17, 14:24
**explaining** [1] - 23:13
**extension** [1] - 8:4
**extremely** [1] - 18:5

## F

**fabricated** [1] - 14:22
**fact** [6] - 5:14, 8:6, 8:25,

12:6, 12:7, 13:4
**facts** [1] - 24:2
**far** [1] - 17:24
**favor** [1] - 9:17
**Fayetteville** [1] - 1:23
**February** [4] - 1:5, 6:10, 7:6, 7:10
**Federal** [1] - 1:22
**fee** [1] - 6:13
**fees** [5] - 5:24, 6:10, 16:5, 17:9, 17:10
**few** [1] - 28:9
**Fifth** [1] - 19:19
**fight** [3] - 20:20, 22:1, 27:15
**fights** [1] - 26:17
**figure** [1] - 22:21
**file** [14] - 8:11, 8:21, 9:25, 10:24, 11:10, 12:4, 12:24, 13:1, 15:7, 15:20, 23:2, 23:6, 23:7
**filed** [12] - 4:12, 5:4, 5:8, 5:12, 6:2, 10:14, 11:6, 11:8, 11:12, 11:23, 21:15
**filing** [9] - 10:10, 11:5, 11:24, 13:2, 16:2, 16:8, 16:12, 18:4
**filings** [1] - 11:23
**financially** [1] - 17:15
**fine** [1] - 16:16
**finer** [1] - 11:20
**firm** [2] - 3:12, 10:22
**first** [1] - 26:24
**FLANAGAN** [1] - 1:10
**floating** [1] - 17:9
**focus** [4] - 5:8, 6:12, 6:14, 27:6
**folks** [1] - 12:1
**foregoing** [1] - 29:3
**formal** [1] - 22:11
**forward** [5] - 13:12, 14:3, 16:2, 23:5, 23:14
**frank** [1] - 15:2
**frankly** [1] - 16:21
**fraudulently** [1] - 11:14
**free** [1] - 12:20
**Friday** [1] - 8:19
**fully** [1] - 10:21
**funding** [1] - 9:1
**future** [1] - 21:17

## G

**genuine** [2] - 8:6, 12:6
**given** [5] - 5:4, 10:12, 21:5, 21:25, 23:15
**glad** [1] - 28:16
**Global** [1] - 3:6
**GLOBAL** [1] - 1:4
**goodbye** [1] - 28:11
**government** [12] - 9:2, 10:17, 12:13, 17:25, 18:2, 18:13, 20:1, 20:2, 21:24, 21:25, 22:15, 26:17
**Government** [4] - 9:3, 9:4, 9:14, 11:15
**government's** [2] - 26:5, 26:7
**grace** [1] - 23:15
**granted** [2] - 6:10, 13:25
**GRAY** [23] - 3:14, 11:20, 12:10, 12:23, 13:10, 14:15, 14:25, 18:3, 18:7, 18:11, 18:18, 19:22, 20:22, 22:5, 22:20, 23:3, 23:12, 23:20, 25:22, 26:1, 26:22, 28:3, 28:12
**Gray** [4] - 1:13, 1:16, 3:14, 19:16
**Gray's** [1] - 14:7
**guess** [1] - 21:19
**guidance** [1] - 20:13

## H

**hammer** [2] - 5:9, 5:20
**hats** [1] - 28:9
**hear** [1] - 10:11
**heard** [1] - 6:20
**Hearing** [1] - 1:6
**hearing** [5] - 3:5, 8:20, 16:11, 19:1, 27:18
**HEARING** [1] - 1:9
**held** [1] - 8:20
**help** [1] - 16:4
**helpful** [2] - 17:6, 17:12
**holding** [1] - 24:22
**home** [1] - 28:13
**Honor** [32] - 3:11, 4:6, 7:8, 8:10, 8:18, 9:8, 9:15, 10:6, 10:7, 11:15, 11:20, 12:10, 13:2, 14:15, 16:5, 17:8, 17:10, 18:3, 18:20, 19:1, 19:22, 21:21, 22:5, 23:5, 23:20, 23:23, 24:21, 25:23, 26:22, 28:3, 28:5, 28:12
**HONORABLE** [1] - 1:10
**hoping** [2] - 3:19, 20:12
**hopper** [1] - 16:22
**hot** [1] - 13:6

## I

**III** [2] - 1:16, 3:14
**impact** [1] - 8:14
**important** [1] - 9:8
**includes** [1] - 19:8
**including** [1] - 17:14
**incriminate** [1] - 19:23
**indicated** [3] - 8:11, 18:12, 19:16
**indictment** [1] - 13:14
**indifferent** [1] - 24:12
**indigent** [1] - 17:15
**information** [5] - 6:21, 11:5, 17:13, 17:15, 20:4
**inherent** [1] - 5:18
**initial** [1] - 22:4
**intend** [1] - 8:21
**interest** [3] - 20:17, 25:2, 25:5
**interesting** [1] - 27:2
**interestingly** [1] - 4:17
**interests** [1] - 25:16
**introduce** [1] - 3:10
**involve** [1] - 26:19
**issue** [7] - 8:6, 9:5, 9:9, 10:5, 11:7, 12:6, 24:23
**issues** [9] - 3:25, 6:13, 10:4, 11:25, 12:6, 12:7, 13:3, 17:10, 20:5
**ITAR** [1] - 9:5

## J

**jacks** [1] - 12:19
**January** [2] - 7:2, 7:12
**job** [1] - 11:1
**JUDGE** [1] - 1:10
**judge** [4] - 13:17, 17:18, 26:9, 26:10
**judgment** [16] - 8:12, 8:15, 8:17, 9:12, 9:25, 10:2, 10:3, 11:10, 11:17, 11:24, 12:5, 12:25, 13:14, 15:15, 16:1, 23:21
**jury** [1] - 15:13
**Justice** [1] - 17:17

## K

**keep** [1] - 6:11
**kind** [4] - 15:2, 22:18, 24:17, 24:21
**known** [1] - 28:21
**knows** [1] - 11:15

## L

**last** [2] - 8:19, 12:12
**law** [2] - 5:13, 19:17
**lawyer** [1] - 25:16
**lead** [1] - 25:6
**leads** [1] - 23:3
**least** [2] - 4:3, 19:1
**leave** [1] - 5:22
**leaves** [2] - 5:22, 5:23
**left** [1] - 10:3
**legal** [2] - 12:20, 25:25
**legitimate** [1] - 13:18
**less** [2] - 7:14, 16:22
**letters** [1] - 11:7
**light** [1] - 8:19
**likely** [1] - 8:7
**limited** [2] - 6:14, 23:17
**litigate** [1] - 8:1
**LLC** [3] - 1:4, 3:6, 3:7
**look** [1] - 10:3
**looking** [2] - 6:21, 20:17
**looks** [2] - 19:18, 22:21
**LOUISE** [1] - 1:10

## M

**ma'am** [1] - 21:12
**Madam** [1] - 21:8
**madam** [1] - 3:3
**magistrate** [2] - 17:18, 26:10
**manner** [1] - 5:4
**MASSEY** [18] - 3:11, 7:8, 7:21, 8:10, 10:7, 11:4, 14:16, 15:7, 15:11, 15:22, 16:4, 16:9, 16:13, 17:8, 18:8, 19:5, 19:11, 20:3
**Massey** [3] - 1:13, 3:12, 7:8
**material** [5] - 8:6, 12:6, 13:3, 21:6, 21:14
**materials** [1] - 25:6
**matter** [8] - 4:5, 8:2, 12:21, 17:6, 19:25, 28:8, 28:18, 29:5
**matters** [1] - 20:18
**McGurk** [3] - 2:1, 29:7, 29:8
**McKinley** [2] - 1:16, 3:14
**Meacham** [2] - 1:19, 3:18
**mean** [5] - 15:25, 22:7, 22:8, 26:18, 27:8
**means** [1] - 12:25
**mechanical** [1] - 2:24
**mechanism** [2] - 22:21, 26:2
**medals** [1] - 3:22
**medical** [1] - 3:25
**member** [1] - 26:14
**memorialize** [1] - 27:23
**memorialized** [1] - 27:21
**memory** [1] - 25:20
**merits** [1] - 9:21
**method** [1] - 6:23
**Middle** [1] - 2:1
**might** [4] - 10:11, 18:1, 25:10, 25:20
**mind** [1] - 23:4
**minutes** [1] - 28:9

**misconduct** [1] - 12:8
**money** [3] - 6:3, 13:19, 15:24
**morning** [1] - 28:20
**Motion** [1] - 1:6
**motion** [40] - 4:11, 4:13, 4:14, 4:15, 4:19, 4:21, 4:22, 5:15, 5:19, 5:23, 5:24, 6:4, 7:7, 7:10, 8:12, 8:14, 8:16, 10:14, 10:15, 11:10, 11:17, 12:4, 13:3, 13:8, 13:21, 13:25, 15:5, 15:7, 15:15, 15:18, 16:3, 16:7, 16:12, 16:22, 17:9, 23:7, 23:16, 23:17, 23:21, 26:20
**MOTION** [1] - 1:9
**motions** [11] - 4:16, 4:18, 4:24, 5:4, 5:6, 8:4, 8:5, 10:24, 14:5, 14:13, 23:6
**move** [1] - 9:24
**moving** [1] - 6:11
**MR** [45] - 3:14, 3:17, 3:21, 3:24, 8:18, 8:25, 9:19, 10:16, 11:20, 12:10, 12:23, 13:10, 14:15, 14:18, 14:20, 14:25, 15:1, 15:9, 15:16, 16:16, 16:19, 16:25, 18:3, 18:7, 18:11, 18:18, 19:22, 20:22, 21:7, 22:5, 22:20, 23:3, 23:12, 23:20, 24:10, 24:15, 25:22, 26:1, 26:22, 27:11, 27:16, 28:3, 28:5, 28:12, 28:13
**MS** [23] - 3:11, 4:6, 7:8, 7:21, 8:10, 10:7, 11:4, 14:16, 15:7, 15:11, 15:22, 16:4, 16:9, 16:13, 17:8, 18:8, 19:5, 19:11, 20:3, 20:9, 21:20, 24:21, 25:12

## N

**N-o-r-i-c-k** [1] - 16:14
**name** [4] - 3:11, 14:20, 16:10, 16:13
**Nath** [12] - 1:23, 4:2, 7:19, 7:22, 7:24, 19:3, 20:7, 21:18, 24:10, 24:17, 28:6, 28:10
**NATH** [5] - 4:6, 20:9, 21:20, 24:21, 25:12
**NC** [5] - 1:14, 1:18, 1:21, 1:24, 2:2
**need** [2] - 22:24, 27:8
**needs** [2] - 4:24, 24:5
**New** [3] - 1:5, 1:18, 2:2
**new** [2] - 16:2, 16:12
**Newman** [2] - 1:19, 3:18
**Norick** [2] - 14:20, 16:14
**NORTH** [1] - 1:1
**North** [2] - 1:5, 19:6
**note** [2] - 4:2, 9:8
**notereading** [1] - 2:24
**nothing** [3] - 9:1, 9:4, 20:22
**number** [5] - 3:7, 4:12, 4:15, 4:20, 4:21

## O

**objection** [6] - 19:20, 20:25, 21:4, 21:5, 26:7, 26:9
**objections** [3] - 7:22, 7:23, 7:25
**obligation** [1] - 22:17
**obligations** [1] - 25:14
**obvious** [1] - 27:8
**obviously** [3] - 12:19, 18:4, 27:23
**odd** [2] - 20:10, 25:4
**OF** [2] - 1:1, 1:9
**officials** [1] - 10:18
**once** [1] - 23:20
**one** [18] - 4:18, 5:5, 5:17, 9:21, 9:22, 10:22, 10:23, 11:7, 11:21, 11:23, 12:10, 13:16, 14:18, 16:21, 21:22, 26:1, 26:10
**opening** [1] - 16:7
**operates** [1] - 13:18
**Operations** [1] - 3:7
**opines** [1] - 14:21
**opinions** [1] - 15:13
**oppose** [1] - 6:17
**opposing** [1] - 11:17
**orally** [1] - 26:20
**order** [11] - 8:20, 9:16, 16:11, 18:15, 18:17, 19:1, 21:10, 21:11, 23:19, 27:17, 27:24
**organization** [1] - 6:24
**otherwise** [1] - 23:17
**outcome** [2] - 7:11, 8:13
**own** [1] - 20:21

## P

**P.A** [2] - 1:12, 1:16
**p.m** [2] - 3:1, 28:23
**paid** [2] - 10:12, 10:23
**pans** [1] - 10:19
**paper** [1] - 6:22
**parallel** [1] - 13:11
**parameters** [1] - 25:15
**part** [2] - 7:7, 14:1
**parte** [1] - 28:7
**parties** [5] - 9:13, 11:9, 11:12, 17:2, 19:14
**parts** [1] - 10:10
**party** [2] - 11:11, 20:10
**pending** [8] - 4:19, 5:3, 7:11, 11:13, 14:3, 23:8, 24:23, 26:17
**people** [1] - 12:18
**perfectly** [1] - 16:16
**perhaps** [1] - 26:18
**permitted** [2] - 8:21, 27:11
**person** [3] - 12:12, 14:19, 15:25
**petition** [2] - 6:2, 6:9
**piece** [3] - 6:22, 9:10, 13:16
**Pinehurst** [2] - 1:21, 3:18
**Plaintiff** [14] - 1:5, 1:12, 3:9, 3:12, 5:12, 5:14, 6:8, 6:9, 6:18, 7:9, 20:19, 21:24, 24:18
**Plaintiff's** [3] - 6:2, 16:9, 24:19
**Plaintiffs** [2] - 6:16, 9:12
**PLLC** [1] - 1:19
**PO** [1] - 1:17
**point** [7] - 10:5, 10:12, 11:19, 11:21, 13:7, 13:8, 23:9
**pointed** [2] - 12:2, 25:1
**ponder** [1] - 26:2
**portion** [1] - 26:7
**position** [3] - 10:5, 20:10, 25:5
**possess** [1] - 24:13
**possession** [1] - 19:7
**possibilities** [1] - 15:4
**powers** [2] - 4:23, 5:18
**practice** [2] - 19:17, 22:6
**precedent** [1] - 24:2
**precise** [1] - 27:20
**precision** [1] - 27:20
**preference** [1] - 15:21
**prepared** [1] - 15:20
**Present** [1] - 1:22
**pretty** [1] - 17:24
**privilege** [1] - 9:6
**proceed** [1] - 20:13
**proceedings** [2] - 11:22, 29:4
**Proceedings** [1] - 2:24
**produce** [2] - 7:16, 19:25
**produced** [1] - 2:24
**producing** [1] - 26:7
**promote** [1] - 24:8
**prophecy** [1] - 14:7
**prosecutors** [1] - 22:22
**protection** [1] - 25:8
**provide** [2] - 24:25, 25:14
**provided** [1] - 20:2
**Public** [1] - 1:22
**public** [3] - 18:24, 26:6, 26:15
**publish** [1] - 24:7
**purportedly** [2] - 11:9, 11:12
**purpose** [1] - 7:9
**purposes** [1] - 22:21
**pursuant** [1] - 5:18
**put** [3] - 21:18, 23:18, 27:17

## Q

**qualified** [1] - 15:11
**quite** [3] - 13:20, 13:21, 24:2

## R

**raised** [2] - 19:20, 19:21
**Raleigh** [2] - 1:14, 1:24
**Randall** [1] - 3:6
**RANDALL** [1] - 1:7
**rarely** [1] - 26:25
**reach** [1] - 27:3
**read** [1] - 5:1
**reading** [2] - 17:19, 19:18
**ready** [1] - 8:19
**really** [9] - 4:24, 5:8, 7:1, 12:15, 13:8, 14:25, 15:1, 17:21, 26:24
**reason** [2] - 10:20, 13:11
**reasonable** [1] - 5:13
**reasonably** [1] - 7:25
**reasons** [3] - 5:21, 9:4, 27:3
**receive** [1] - 21:14
**received** [2] - 7:22, 18:12
**recognize** [1] - 4:24
**recognized** [2] - 4:19, 5:3
**record** [5] - 3:10, 26:16, 27:25, 28:15, 29:4
**recorded** [1] - 2:24
**redacted** [4] - 4:18, 4:20, 4:22, 5:9
**refers** [1] - 18:17
**regard** [3] - 5:17, 11:14, 20:4
**regarding** [3] - 11:4, 11:17, 20:5
**Regional** [1] - 1:20
**released** [1] - 20:24
**relied** [1] - 15:12
**relieve** [1] - 27:18
**rely** [5] - 9:11, 15:25, 16:24, 24:10, 24:13
**relying** [3] - 12:1, 15:15, 16:25
**remaining** [1] - 4:11
**remind** [2] - 14:14, 14:19
**reply** [2] - 13:2, 23:7
**Reporter** [1] - 2:1

**represent** [1] - 4:4
**representation** [2] - 20:14, 24:24
**represented** [1] - 18:22
**request** [9] - 6:16, 7:1, 10:11, 17:1, 18:23, 22:11, 22:13, 24:19, 26:4
**requested** [1] - 7:15
**required** [1] - 18:16
**research** [1] - 19:18
**resolution** [2] - 23:10, 24:23
**resources** [2] - 13:16, 15:2
**respect** [1] - 25:16
**respond** [4] - 6:6, 10:7, 11:3, 16:18
**responding** [1] - 24:19
**response** [4] - 6:1, 8:14, 13:1, 23:7
**responses** [3] - 6:18, 12:13, 17:16
**responsible** [1] - 24:18
**responsive** [1] - 6:21
**result** [1] - 25:3
**review** [1] - 25:2
**revisit** [1] - 10:4
**RMR** [2] - 2:1, 29:8
**road** [1] - 28:17
**room** [2] - 14:10, 28:2
**Rule** [2] - 5:15, 8:7
**rule** [3] - 9:16, 10:2, 19:7
**ruled** [1] - 23:20

**S**

**safe** [1] - 28:11
**Samuel** [1] - 1:16
**sanctions** [2] - 4:16, 5:16
**satisfied** [1] - 17:19
**save** [3] - 13:16, 15:22, 15:24
**saw** [1] - 7:19
**schedule** [2] - 22:24, 22:25
**scheduling** [1] - 18:15
**scope** [2] - 8:23, 8:25
**seal** [4] - 4:14, 11:14, 21:1, 28:7
**sealed** [9] - 17:16, 18:13, 20:18, 20:20, 20:23, 21:6, 21:14, 27:24, 27:25
**searching** [1] - 3:22
**seat** [1] - 19:4
**seated** [2] - 10:9, 13:23
**second** [1] - 6:3
**see** [15] - 9:23, 10:14, 13:7, 14:8, 17:3, 17:25, 18:2, 18:6, 18:7, 18:8, 18:10, 18:16, 22:8, 24:17, 26:18
**seeing** [1] - 20:25
**seeking** [1] - 6:2
**separately** [3] - 4:19, 4:25, 9:22
**serious** [1] - 11:25
**serve** [1] - 21:9
**services** [1] - 12:20
**setting** [1] - 26:25
**settled** [1] - 28:20
**several** [1] - 27:3
**shall** [1] - 14:7
**share** [1] - 21:4
**short** [2] - 23:18, 28:8
**show** [3] - 17:9, 23:19, 26:20
**side** [7] - 14:10, 16:9, 20:23, 21:22, 22:6, 24:25, 28:1
**sides** [1] - 16:21
**significance** [1] - 10:13
**significant** [2] - 6:3, 12:23
**simply** [1] - 15:3
**single** [2] - 9:10, 23:17
**situation** [1] - 27:2
**Smith** [4] - 1:12, 1:16, 3:13, 3:15
**Snayha** [1] - 1:23
**sometimes** [1] - 10:14
**sort** [3] - 5:24, 25:5, 25:13
**sought** [1] - 20:5
**sources** [1] - 27:7
**Special** [1] - 3:6
**speculative** [1] - 15:13
**spent** [1] - 13:19
**spoken** [1] - 27:21
**St** [2] - 1:23, 2:1
**stable** [1] - 3:25
**start** [3] - 4:10, 20:15, 21:2
**States** [3] - 9:3, 9:13, 11:15
**STATES** [2] - 1:1, 1:10
**stay** [16] - 5:23, 6:13, 6:15, 7:1, 7:7, 7:9, 7:10, 8:8, 10:4, 12:16, 13:9, 13:25, 27:3, 27:10, 28:7
**stayed** [5] - 6:1, 19:14, 23:9, 23:23, 23:25
**staying** [2] - 9:14, 14:4
**stenography** [1] - 2:24
**stick** [1] - 10:25
**stop** [1] - 13:7
**storage** [2] - 3:21, 6:21
**stuff** [1] - 20:23
**subject** [1] - 11:22
**submit** [1] - 6:9
**subpoena** [2] - 22:22, 26:17
**subpoenaing** [1] - 25:18
**substance** [1] - 6:12
**suggesting** [1] - 22:9
**Suite** [2] - 1:14, 1:23
**summary** [16] - 8:12, 8:15, 8:17, 9:12, 9:25, 10:2, 10:3, 11:10, 11:17, 11:24, 12:5, 12:25, 13:13, 15:15, 16:1, 23:21
**supposed** [1] - 28:18
**survive** [1] - 23:24
**switch** [1] - 28:9
**system** [2] - 4:17, 4:24

**T**

**table** [1] - 19:4
**Tackett** [17] - 3:6, 3:19, 4:5, 9:16, 9:22, 10:25, 11:5, 11:21, 12:8, 12:20, 14:22, 19:11, 19:24, 20:2, 22:17, 25:11, 25:14
**TACKETT** [1] - 1:7
**Tackett's** [2] - 9:10, 17:14
**Taiwanese** [1] - 9:3
**tale** [1] - 9:21
**technically** [1] - 19:12
**terminate** [2] - 5:5, 5:7
**terms** [1] - 20:12
**testimony** [3] - 9:11, 14:13, 15:6
**THE** [67] - 1:10, 3:2, 3:5, 3:9, 3:16, 3:19, 3:23, 4:1, 4:8, 5:3, 5:7, 7:17, 7:24, 8:16, 8:23, 9:18, 10:8, 11:2, 12:9, 12:22, 13:5, 13:20, 13:25, 14:17, 14:19, 14:24, 15:5, 15:10, 15:14, 15:17, 15:24, 16:6, 16:10, 16:15, 16:17, 16:20, 17:3, 17:16, 18:6, 18:10, 18:15, 19:3, 19:9, 20:6, 20:15, 21:2, 21:8, 21:12, 21:13, 21:22, 22:10, 22:23, 23:11, 23:15, 24:1, 24:14, 24:16, 25:8, 25:17, 25:24, 26:12, 26:23, 27:13, 27:17, 28:4, 28:6, 28:16
**themselves** [1] - 4:18
**they've** [1] - 25:17
**third** [5] - 9:13, 11:9, 11:11, 11:12, 17:2
**third-party** [1] - 11:11
**Thomas** [1] - 1:20
**three** [2] - 12:1, 28:11
**today** [3] - 3:20, 4:3, 4:10
**together** [1] - 27:18
**Tom** [1] - 3:17
**tomorrow** [5] - 8:21, 14:5, 15:8, 15:19, 17:3
**Touhy** [2] - 12:13, 17:1
**Tracy** [3] - 2:1, 29:7, 29:8
**TRANSCRIPT** [1] - 1:9
**transcript** [2] - 2:24, 29:3
**transferred** [1] - 18:20
**travels** [1] - 28:11
**trial** [10] - 7:11, 8:9, 12:14, 13:9, 13:12, 14:1, 14:2, 16:2, 23:10, 23:22
**true** [1] - 14:7
**try** [6] - 12:17, 17:22, 17:23, 22:3, 26:20, 27:12
**trying** [4] - 22:11, 22:21, 26:2, 27:4
**turn** [1] - 5:11
**turned** [2] - 18:25, 26:8
**two** [5] - 4:16, 9:21, 11:25, 14:21, 28:18
**type** [1] - 23:16

**U**

**U.S** [1] - 25:19
**under** [4] - 19:5, 20:25, 25:2, 28:7
**understood** [2] - 21:20, 27:16
**unique** [1] - 24:3
**unit** [2] - 3:21, 6:21
**United** [3] - 9:3, 9:13, 11:14
**UNITED** [2] - 1:1, 1:10
**unless** [1] - 19:19
**up** [11] - 4:23, 6:5, 6:13, 6:24, 12:19, 14:6, 16:1, 17:6, 19:4, 23:4, 26:20
**updated** [1] - 6:17

**V**

**VAN** [22] - 3:17, 3:21, 3:24, 8:18, 8:25, 9:19, 10:16, 14:18, 14:20, 15:1, 15:9, 15:16, 16:16, 16:19, 16:25, 21:7, 24:10, 24:15, 27:11, 27:16, 28:5, 28:13
**Van** [7] - 1:19, 1:20, 3:17, 3:18, 11:9, 11:22, 18:22
**vehicle** [1] - 24:5
**versed** [1] - 18:5
**version** [2] - 4:20, 4:22
**versions** [2] - 4:18, 5:9
**violated** [1] - 5:15
**Virginia** [1] - 14:23

**W**

**wait** [4] - 17:4, 17:11, 22:8, 23:1
**waited** [1] - 9:19
**walk** [1] - 10:24
**wants** [1] - 21:24
**Ward** [4] - 1:12, 1:16, 3:13,

3:15
**Washington** [1] - 12:18
**waste** [1] - 12:4
**weighty** [1] - 17:24
**welcome** [1] - 3:16
**WESTERN** [1] - 1:2
**wife's** [1] - 28:14
**win** [1] - 8:7
**wish** [1] - 25:10
**withdraw** [3] - 10:11, 10:15, 10:20
**witness** [2] - 10:17, 14:13
**witness's** [1] - 16:13
**WOOD** [1] - 1:10
**words** [1] - 27:21
**worry** [1] - 27:19
**wrap** [1] - 6:13
**write** [1] - 16:11
**writing** [3] - 21:18, 23:1, 27:22
**written** [1] - 23:1

**Y**

**yourself** [1] - 19:23
**yourselves** [1] - 3:10